EUGENE M. JACOBSON, dba ROTOMETALS, Appellant, v. JUSTIN R. MANFREDI, by His Natural Mother and Next Friend, BRENDA MANFREDI; and BRENDA MANFREDI, Respondents.

No. 14211

EUGENE M. JACOBSON, dba ROTOMETALS, Appellant, v. JOHN MANFREDI, Respondent.

No. 14267

April 3, 1984                                    679 P.2d 251

*Cromer, Barker, Michaelson, Gillock & Rawlings* and *Victor Alan Perry,* Reno, for Appellant.

*Peter Chase Neumann,* Reno; *Smith and Gamble,* Carson City, for Respondents.

## OPINION

*Per Curiam:*

These are consolidated appeals from a judgment upon jury

verdicts awarding damages to respondents Justin and Brenda Manfredi, from a judgment granting additur or a new trial limited to damages in favor of Justin Manfredi, and from a judgment notwithstanding the verdict awarding damages to John Manfredi.[1] For the reasons set forth hereinafter the judgment upon jury verdicts and the judgment granting additur are affirmed, as modified, and the judgment notwithstanding the verdict is vacated and the judgment upon the jury verdict is reinstated.

John Manfredi, who was building a new house for his family, purchased from a local hardware store a four-ounce container of liquid soldering flux manufactured by appellant, Eugene M. Jacobson, who does business as Rotometals. Manfredi testified that he knew the flux was poisonous, was dangerous, should not be swallowed and should not be left where children could reach it. After using the flux to clean and solder copper water pipes, Manfredi nevertheless placed the container on a windowsill. He does not know whether or not he replaced the cap. That evening, Manfredi's wife, Brenda, and their two-year-old son, Justin, made one of their routine visits to the construction site. While Brenda helped Manfredi hang some plasterboard, Justin (who could have removed the container's cap by himself) took the container from the windowsill and drank some flux. The flux contained a high percentage of zinc chloride, which rapidly kills living tissue. Justin cried and then began to cough, spit and vomit. His parents came over and immediately ascertained what had occurred. They rushed Justin home and tried to get him to drink some milk, as the container suggested. After a short time, they decided to take Justin to the local hospital in Hawthorne. From there, Justin was sent by ambulance to a medical center in Reno.

The significant damage to Justin's stomach was massive and almost instantaneous, according to expert medical testimony; damage concluded after twenty or thirty minutes. Four months after the accident, Justin's stomach and upper and lower stomach valves were removed. A small "pouch" was fashioned from a section of the boy's small intestine. The pouch performs only a food-holding function, not any of the other important stomach functions such as food grinding, bacteria elimination, digestion and absorption of vitamin B-12. As a result, Justin must avoid certain foods, eat ten to thirteen small meals each day, have numerous daily bowel movements, and receive vitamin B-12 shots. Justin's growth has been slowed substantially

---

[1]The Court has determined that consolidation of these appeals will assist in their disposition. NRAP 3(b).

and he is likely to age prematurely. Due to the loss of his esophageal valve, Justin refluxes food and saliva and risks aspirating food into his lungs. As a result of the loss of his pyloric valve, Justin suffers "dumping syndrome," which refers to this digestive system's inability to absorb nutrients adequately. Justin's condition is permanent and without remedy.

Justin and his mother brought an action based on negligence and strict products liability theories against Rotometals as manufacturer of the soldering flux and the local hardware store.[2] Rotometals sued John Manfredi for indemnification based on the father's negligent conduct. John Manfredi then filed a third-party counterclaim against Rotometals.

At the close of trial, the jury returned verdicts awarding Justin Manfredi $200,000.00 and Brenda Manfredi $50,000.00, plus costs and interest. The jury also decided that neither Rotometals nor John Manfredi was entitled to any award in the third-party action, despite the district court's directed verdict in Manfredi's favor. Justin Manfredi then moved for additur. The district court granted him an additur of $650,000.00, plus interest. The court concluded that the damages awarded Justin by the jury's verdict were clearly inadequate and that a new trial limited to the issue of damages would be granted unless the defendant accepted the additur. John Manfredi moved for a judgment notwithstanding the verdict, contending that the jury could not have properly awarded Justin's mother $50,000.00 for her suffering and excluded himself, who suffered the same anguish as a result of Justin's accident. The district court agreed and awarded John Manfredi $50,000.00 also.

Rotometals appeals from the judgment upon jury verdicts in favor of Justin and Brenda Manfredi and from the judgment awarding Justin an additur or, in the alternative, a new trial relating only to damages. (No. 14211.) Rotometals also appeals the judgment notwithstanding the verdict in favor of John Manfredi. (No. 14267.)

The manufacturer's first contention is that the district court abused its discretion by striking its motion for recusation. Rotometals claims that eighteen days before trial it first learned of a working relationship which the district court judge had with both John Manfredi (former Mineral County Juvenile Probation Officer for over three years) and Justin Manfredi's

[2]The hardware store was dismissed after the parties' opening statements when it became apparent that its only involvement was as seller of the product, for which it enjoyed indemnity from the manufacturer.

aunt (*Mineral County Probation Department* secretary for eight years). Twelve days before trial, Rotometals filed its motion for recusation pursuant to NRS 1.235. Respondents Justin and Brenda Manfredi thereupon filed a motion to strike on grounds that the motion was untimely. NRS 1.235 requires that a motion for recusation be filed "not less than 20 days before the date set for trial or hearing of the case." After properly determining that listed exceptions to the twenty-day deadline did not apply, the district court concluded that Rotometals' motion was untimely and granted respondents' motion to strike. We hold that such action did not constitue an abuse of discretion. The manufacturer's argument that it was "surprised" by new facts about John Manfredi's former relationship with the district court judge lacks merit as Rotometals learned of Manfredi's former position during the discovery period. Time limitations are not extended for litigants who knew or should have known the necessary facts at an earlier date. Rademacher v. City of Phoenix, 442 F.Supp. 27, 29 (D. Ariz. 1977); Hirschkop v. Virginia State Bar Association, 406 F.Supp. 721 (E.D. Va. 1975). Moreover, a judge, especially a judge in a small town, need not disqualify himself merely because he knows one of the parties.

> [A judge] must have neighbors, friends, and acquaintances, business and social relations, and be a part of his day and generation. Evidently the ordinary results of such associations and the impressions they create in the mind of the judge are not the "personal bias or prejudice" to which the statute refers.

*Ex parte* N. K. Fairbank Company, 194 F. 978, 989 (M.D. Ala. 1912).

> There is no more of a disposition for a judge to rule in favor of an acquaintance or friend because of that fact than there is a disposition for him to rule against an acquaintance or friend because of that fact. The fact of friendship could result in a "leaning over backwards" to maintain impartiality, or it could result in the opposite. But an allegation of friendship, without more, is not sufficient to establish that either is likely to happen. . . .
> Without a valid reason for recusal, a judge has a duty not to recuse himself.

Cline v. Sawyer, 600 P.2d 725, 729 (Wyo. 1979), *aff'd on other grounds,* 618 P.2d 144 (Wyo. 1980); *accord,* Ham v. District Court, 93 Nev. 409, 415, 566 P.2d 420, 424 (1977). The mere allegations that Judge Beko had a prior professional relationship with John Manfredi and a current professional relationship with Justin Manfredi's aunt do not demonstrate judicial

bias sufficient for us to hold that it was an abuse of discretion to strike appellant's motion for recusation.

Rotometals' second contention is that the district court abused its discretion by admitting evidence relating to subsequent remedial product changes. Rotometals made a pretrial motion in limine to preclude Justin and Brenda Manfredi from introducing any evidence of subsequent changes in labeling or packaging of the product. The motion was denied. The product container from which Justin drank had a widemouthed top and certain label warnings. Subsequent to Justin's accident, the product was marketed in a container with a narrower squirt top, a label providing stronger warnings and a circular providing additional warnings and information. During cross-examination, appellant Jacobson was asked about the feasibility of using a container with a child-proof cap and stronger label warnings; Jacobson readily conceded that such changes could have been made, but he also explained why he believed his widemouthed container was safer than containers with smaller openings from which the product was often poured into unmarked containers wide enough for pipe ends to be dipped into them. Moreover, Rotometals presented evidence that its original label warnings were adequate. At trial, respondents introduced the new container and the circular into evidence. NRS 48.095, patterned after Rule 407 of the Federal Rules of Evidence, excludes evidence of subsequent remedial measures to prove negligence or culpable conduct, unless such evidence is offered to prove another purpose such as feasibility of precautionary measures.[3] In this case the feasibility exception applies because Rotometals contested the utility and safety provided by the original container and labels versus the subsequent product container and labels.

> Whether something is feasible relates not only to actual possibility of operation, and its cost and convenience, but also to its ultimate utility and success in its intended performance. That is to say, "feasible" means not only "possible," but also means "capable of being . . . utilized, or dealt with successfully." *Webster's Third New International Dictionary* 831 (unabridged ed. 1967); *see Black's*

---

[3]NRS 48.095 provides:

  1. When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event.

  2. This section does not require the exclusion of evidence of subsequent remedial measures when offered for another purpose, such as proving ownership, control, feasibility of precautionary measures, or impeachment.

*Law Dictionary* 549 (5th ed. 1979) ("reasonable assurance of success").

Anderson v. Malloy, 700 F.2d 1208, 1213 (8th Cir. 1983). We therefore hold that admission of the evidence regarding subsequent remedial product changes was within the district court's discretion.

Rotometals' third contention is that the district court's grant of additur was improper as both a violation of the Seventh Amendment and an abuse of discretion. We have previously analyzed at length the Seventh Amendment issue as it relates to additur. "The guarantee of trial by jury provided in the Seventh Amendment to the United States Constitution, which is not binding on the states, is substantially different from the jury trial guarantees of . . . the Nevada Constitution." Drummond v. Mid-West Growers Cooperative Corporation, 91 Nev. 698, 709, 542 P.2d 198, 206 (1975) (footnote omitted). We then held that additur does not violate our state constitution. We reaffirm that holding now. We also hold that the grant of additur in the instant case did not constitute an abuse of the district court's discretion. The court properly followed the procedure set forth in *Drummond.* "The court upon appropriate motion should first determine whether the damages are clearly inadequate and, if so, whether the case would be a proper one for granting a motion for a new trial limited to damages." *Id.* at 712, 542 P.2d at 208; Eikelberger v. Tolotti, 94 Nev. 58, 60-61, 574 P.2d 277, 279 (1978). After making these determinations, the court awarded additur. Recognizing Justin's young age and the formidable permanent injury he has suffered, we cannot conclude that the district court abused its discretion. Having stated in *Drummond* that there is "no essential difference between the procedures appropriate for remittitur and additur," 91 Nev. at 712, 542 P.2d at 208, we note with respect to additur, as we stated regarding remittitur, that our review is weighted in favor of the district court's order.

> When the trial judge orders a remittitur damnum [or additur] and we are asked to review his action, the test is whether he abused his discretionary power. Gill v. Epstein, 401 P.2d 397 (Cal. 1965). This is an elusive standard. We must accord deference to the point of view of the trial judge since he had the opportunity to weigh evidence and evaluate the credibility of witnesses—an opportunity foreclosed to this court. To this extent the appeal is weighted in favor of the order entered, and when there is a

material conflict of evidence as to the extent of damage, a challenge to the trial court's exercise of discretion is substantially repelled.

Harris v. Zee, 87 Nev. 309, 311-12, 486 P.2d 490, 491-92 (1971). The order granting additur, therefore, is affirmed.[4]

Rotometals' fourth and final contention with respect to Justin and Brenda Manfredi's case is that the district court erred in awarding prejudgment interest at the rate of twelve percent when the verdicts and order granting additur did not distinguish between past and future damages. The jury's general verdicts in favor of Justin and Brenda Manfredi did not distinguish between past and future damages, except with respect to Justin's $33,175.00 in medical expenses. The district court's order granting additur for Justin likewise failed to make such a distinction. NRS 17.130(2) clearly prohibits prejudgment interest on future damages.[5] Rotometals argues that when the verdicts and orders are unclear and the awards could possibly represent future damages only, prejudgment interest is inappropriate. The manufacturer cites our recent opinion in Stickler v. Quilici, 98 Nev. 595, 655 P.2d 527 (1982) as authority for its position. We agree that *Stickler* applies in the instant case to bar recovery of prejudgment interest, except on Justin's medical expenses. Respondents failed to sustain their burden to preserve a record supporting awards of prejudgment interest.

The plaintiffs bear the burden of proving every essential fact necessary to establish their cause of action. Since the amount of past damages in this case is not ascertainable, the plaintiffs, respondents herein, cannot be said to have sustained their burden of proof in a manner which will support an award of interest based on past damages.

---

[4]The district court's order granted additur or, in the alternative, a new trial limited to the issue of damages. Having appealed the order granting additur, appellant is deemed to have made his election and cannot choose a new trial on the issue of damages now that he has lost his appeal concerning the additur issue.

[5]NRS 17.130(2) provided, at the time the complaint was filed, as follows:

2. When no rate of interest is provided by contract or otherwise by law, or specified in the judgment, the judgment draws interest at the rate of 8 percent per annum from the time of service of the summons and complaint until satisfied, except for any amount representing future damages, which draws interest at that rate only from the time of the entry of the judgment until satisfied.

Unless the amount of past damages is established in some manner, it is not proper for a prejudgment interest award to be made.

*Id.* at 597, 655 P.2d at 528.

Prejudgment interest, therefore, is only allowed on the $33,175.00 representing Justin's past medical expenses. The district court erred, moreover, in setting the prejudgment interest rate at twelve percent. NRS 17.130(2) does not, contrary to respondents' interpretation, endow the district court with power to choose an interest rate. We hold that the district court is bound by the effective statutory interest rate. The statute provided for eight percent interest when respondents' complaint was filed on November 28, 1979.[6] Justin is entitled, therefore, to eight percent prejudgment interest on the amount of his judgment representing past medical expenses. We have considered Rotometals' other contentions concerning Justin and Brenda Manfredi's case and have concluded that they are without merit. Accordingly, the judgment upon jury verdicts and the order granting additur are modified to provide interest at eight percent on Justin's past medical expenses only. As modified, the judgment and order are affirmed.

Rotometals' first contention with regard to John Manfredi's case is that there is substantial evidence to support the jury's verdict denying Manfredi's recovery, thereby making it error for the district court to grant judgment notwithstanding the verdict. We agree. We have previously stated that judgment notwithstanding the verdict is inappropriate when there is any substantial evidence to support the verdict.

The sole issue before us on this appeal is whether, in the record before the trial court, there is any substantial evidence to support the jury's verdict. . . . A motion for judgment notwithstanding the verdict presents solely a question of law to be determined by the court, and the power to grant such motions should be cautiously exercised. . . .

" 'In determining whether to render a judgment non obstante veredicto, the court is not justified in trespassing on the province of the jury to be the judge of all questions of fact in the case, and the party favored by the verdict is entitled to have the testimony read in the light most advantageous to him, and to be given the benefit of every inference of fact fairly deductible therefrom. Accordingly, an

[6]NRS 17.130(2) was subsequently amended from eight percent to twelve percent for all causes of action arising on or after July 1, 1981. 1981 Nev. Stats. ch. 739 §§ 2, 6, pp. 1858-59.

application for such judgment will be refused where there is evidence tending to support the verdict, or where there is a conflict of evidence, so that the jury could properly decide, either way, even though the conflict is such that the Court would be justified in granting a new trial. . . .' "

Dudley v. Prima, 84 Nev. 549, 551, 445 P.2d 31, 32 (1968) (citations omitted) (quoting largely from 30A Am.Jur. *Judgments* § 300 (1958)). Manfredi's counterclaim was based upon negligence or strict products liability. Substantial evidence supports the jury's verdict under both theories.

Regarding his negligence cause of action, Manfredi knew the product was poisonous, dangerous, should not be swallowed and should not be left where children could reach it. The jury could easily have concluded, based upon the jury instruction given concerning comparative negligence, that Manfredi's negligence in leaving the product within his son's reach exceeded that of the manufacturer with respect to the labeling and packaging of the toxic product. In addition, because Brenda Manfredi knew nothing about soldering or flux, the jury could have consistently determined that she was entitled to recover on a negligence theory.

Regarding strict products liability, the jury was instructed that "no liability follows an injury resulting from abnormal or unintended use." Even if the jury found the product unreasonably dangerous, it may have found that John Manfredi's conduct constituted abnormal or unintended use resulting in no liability on the part of Rotometals. As Brenda was not using the product and did not leave it within Justin's reach, the jury again consistently could have found she was entitled to recover on a strict products liability theory. While Manfredi convincingly argues that his conduct is not the sort of misuse which bars recovery on strict products liability claims, he failed to request that the jury be instructed concerning the correct definition of "misuse" in the context of the instant case. While respondents and the district court may have understood that Manfredi should not have been barred by his negligence from recovering under a strict liability cause of action, it was possible for the jury to conclude otherwise based on its instructions. Manfredi, therefore, has failed to demonstrate that it would have been "impossible" for the jury to have reached its verdict that he was not entitled to recover against the appellant. Weaver Brothers, Ltd. v. Misskelley, 98 Nev. 232, 234, 645 P.2d 438, 439 (1982). The district court's order granting judgment notwithstanding the verdict is, therefore, vacated, and

the judgment upon the jury verdict denying John Manfredi any recovery is reinstated. Having made this determination, we need not reach Rotometals' other contentions regarding John Manfredi's case.

In conclusion, the amounts of the judgment upon the jury verdicts for Brenda and Justin Manfredi are affirmed. The prejudgment interest awards, moreover, are modified to embrace only Justin's past medical expenses and to provide eight percent interest. The judgment granting additur for Justin is affirmed as to its amount but modified to exclude any prejudgment interest. The judgment notwithstanding the verdict is vacated and the judgment upon the jury verdict denying John Manfredi any recovery is reinstated.