406 S.E.2d 725

**George W. BOSTIC, Plaintiff Below, Appellant,**

**v.**

**MALLARD COACH COMPANY, INC., Defendant Below, Appellee.**

**No. 19790.**

Supreme Court of Appeals of West Virginia.

Submitted May 8, 1991.

Decided June 27, 1991.

Robert B. Sayre, Beckley, for George W. Bostic.

Stephen P. Swisher, Dunbar, for Mallard Coach Co., Inc.

NEELY, Justice:

George W. Bostic appeals from a Raleigh County jury verdict that awarded him $10,-000 in damages and from an additional award of $5,000 for attorney's fees in his suit against Mallard Coach Company, Inc. to rescind the purchase of a recreational vehicle under *W. Va. Code*, 46A–6A–1 *et seq.* [1989], our state's lemon law. On appeal, Mr. Bostic contends that revocation and refund of the purchase price of the recreational vehicle was the only acceptable measure of damages and that in addition to the award of his attorney's fees, he should also

have been awarded costs, which were about $7,500. Although revocation and refund is not justified, we find that Mr. Bostic should be awarded an additional $3,000 under the original jury verdict and, therefore, we reverse the circuit court and remand the case for an *additur* of $3,000 or, if Mallard objects, a new trial on the issue of damages alone.

On 28 March 1987, Mr. Bostic purchased a new recreational vehicle manufactured by Mallard from Ben's RV Center of Hurricane, W.Va., an authorized dealer for Mallard. The purchase price of the recreational vehicle was $46,355 and Mr. Bostic paid an additional $3,319 for taxes, insurance and registration. The recreational vehicle came with the following express warranty:

> The Warrantor (Mallard Coach Co., Inc.) warrants to the original consumer purchaser for a period of one year from the date of purchase that this Recreational Vehicle (a vehicle unit designed for recreational, camping, travel or seasonal use) shall be free of substantial defects in materials and workmanship attributable to warrantor.

Mr. Bostic contends that the recreational vehicle is dangerous and unstable because the recreational vehicle weighs about 1,100 pounds more on the left side than on the right side. Mr. Bostic returned the recreational vehicle to Ben's about three times; the recreational vehicle was also serviced once by American Campers, another authorized Mallard dealer, and once by General Truck Sales at Mallard's request. The recreational vehicle remained in the repair shop on one occasion for 39 days and General Truck Sales had the vehicle for two weeks.[1] On 24 February 1988, Mr. Bostic wrote Mallard concerning the defects. A difference of opinion arose concerning the method that would best solve the uneven weight problem. Mallard offered to install leveling blocks, which cost about $100 and Mr. Bostic wanted Mallard to install springs, which cost about $500. American Camper had already installed air bags.

Mr. Bostic rejected Mallard's offer and instituted suit to rescind the purchase.

During the trial, Luther McGinty, a professional engineer testifying for Mr. Bostic, said that the recreational vehicle weighed 1,100 pounds more on the left or driver's side and that the uneven weight could cause braking problems, steering problems and problems controlling the vehicle in windy conditions or on winding roads. Mr. McGinty, based on his testing of the recreational vehicle, demonstrated that the vehicle leaned to the driver's side and leaned when turning.

Mallard refuted Mr. McGinty's findings with testimony from James Krider, a professional engineer who is a design consultant for motor homes, including Mallard. Mr. Krider acknowledged that the recreational vehicle had unbalanced weight but said that the floor plan of the vehicle makes a balanced weight unlikely. Because of the unbalanced weight of recreational vehicles, the chassis manufacturer, Chevrolet, said that consideration be given to spacer blocks to level the chassis.

However, Mr. Krider said that his examination of the recreational vehicle showed the chassis was level. Mr. Krider said the front of the recreational vehicle or the "fiberglass cap needs to be adjusted." The fiberglass cap "bolts on to the motor home with no regard to the chassis. It just bolts to the box portion of it. So, while the front cross member or the chassis is level, the bumper and the cap, that physically sits, needs to be adjusted back to make it level with regard to the chassis." According to Mr. Krider, the problem is cosmetic and does not make the recreational vehicle unsafe. Mr. Krider noted that the air bags installed by American Camper were underinflated, which "has a tendency to [make the recreational vehicle] plow, oversteer and not corner correctly."

After Mr. Krider's testimony, Mr. Bostic reexamined the recreational vehicle and testified that it leaned "an inch to an inch and a half" to the driver's side. Mr. Bostic

---

1. The record does not indicate if the uneven weight distribution caused the 39–day service at Ben's.

said that the bumper was welded to the frame by extensor and the right extensor went up and the left extensor went down. Mr. Bostic said "if the cab is off down here, then the whole top of the thing has to be off because it's all one piece."

The jury returned a verdict in favor of Mr. Bostic that awarded him "$4,659.00 + Eng Fees, Lawyer fees, fix Cap & bumper."[2] After the verdict was rejected because it was not a sum certain, the jury then awarded Mr. Bostic $10,000.[3] By order entered 4 June 1990, the Circuit Court refused to set aside the jury verdict and damage award, awarded Mr. Bostic $5,000 for reasonable attorney's fees and refused to award $7081.58 to Mr. Bostic for his expert witness's fee.

Mr. Bostic appeals on two grounds:

(1) Mr. Bostic maintains that the only measure of damages allowed when a defect is likely to cause death or serious bodily injury is the replacement of the flawed vehicle with a comparable new motor vehicle; and

(2) Mr. Bostic also maintains that his costs for an expert witness's fee should be awarded to him.

Although we do not agree that Mr. Bostic should have been awarded a new vehicle, we find that the jury intended to award Mr. Bostic about $4,600 in addition to his repair costs and his fees for his expert witness and attorney. In order to preserve the jury's assessment of damages as shown by the first version of the verdict, we find that the circuit court should have added an additional $3,000 or, if Mallard

objected, ordered a new trial on the issue of damages alone.

### I

*W.Va.Code*, 46A–6A–1 *et seq.* (1989), entitled "Consumer Protection–New Motor Vehicle Warranties," is based on the public policy that "places upon the manufacturer of motor vehicles 'the duty to meet their obligations and responsibilities under the terms of the express warranties extended to the consumers of this State.'" Syllabus Point 1, in part, *Adams v. Nissan Motor Corp. in U.S.A.*, 182 W.Va. 234, 387 S.E.2d 288 (1989). The manufacturer's duty to repair or replace a new vehicle is specified in *W.Va.Code*, 46A–6A–3 [1984], which provides:

(a) If a new motor vehicle purchased in this State on or after the first day of January, one thousand nine hundred eighty-four does not conform to all applicable express warranties and the consumer reports the nonconformity to the manufacturer, its agent or its authorized dealer during the term of the express warranties or during the period of one year following the date of original delivery of the new motor vehicle to a consumer, whichever is the later date, the manufacturer, its agent or its authorized dealer shall make the repairs necessary to conform the vehicle to the express warranties, notwithstanding the fact that the repairs are made after the expiration of the warranty term.

(b) If the manufacturer, its agents or its authorized dealer are unable to con-

---

**2.** The original jury verdict would have resulted in about a $18,000 award for Mr. Bostic based on the repair estimate and the fees charged by his attorney and expert witness.

**3.** The jury was given the following form, to indicate a verdict in favor of the plaintiff:

SPECIAL INTERROGATORIES AND
VERDICT FORM

(If you find in favor of the plaintiff, you may choose one or the other but not both of the following verdicts.)

We, the jury, find in favor of the plaintiff, George W. Bostic, and against the defendant, Mallard Coach Company, Inc., and find that

the plaintiff is entitled to revocation of acceptance of the vehicle, and we assess his damages for annoyance, inconvenience and loss of use at $_____.

_____          _____
     Date                    Foreperson

We, the jury, find in favor of the plaintiff, George W. Bostic, and against the defendant, Mallard Coach Company, Inc., and find that the plaintiff is not entitled to revocation of acceptance of the vehicle, and we assess his damages at $_____.

_____          _____
     Date                    Foreperson

form the new motor vehicle to any applicable express warranty by repairing or correcting any defect or condition which substantially impairs the use or market value of the motor vehicle to the consumer after a *reasonable number of attempts*, the manufacturer shall replace the new motor vehicle with a comparable new motor vehicle which does conform to the warranties. [Emphasis added.]

In Syllabus Point 2, *Adams*, we noted the relationship between the definition of a "reasonable number of attempts" found in *W.Va.Code*, 46A–6A–5 [1984], and the manufacturer's duty as specified in *W.Va.Code*, 46A–6A–3 [1984], by stating:

If the consumer can show a defect or condition 'which substantially impairs the use or market value of the motor vehicle to the consumer ...,' then the court's attention shifts to W.Va.Code § 46A–6A–5 to determine what is considered to be, as required by W.Va.Code § 46A–6A–3(b), a 'reasonable number of attempts' by the manufacturer or dealer to conform the vehicle to the applicable express warranties. W.Va.Code § 46A–6A–3(b) and 5 (1986).

*W.Va.Code*, 46A–6A–5(a) and (b) [1984] [4], provide that the manufacturer's duty, as specified in *W.Va.Code*, 46A–6A–3 [1984], can be triggered by any of the following:

(1) "If the defect is not likely to cause death or serious bodily injury, then it is presumed that 'a reasonable number of attempts' to fix the vehicle has been undertaken if the same defect is subject to repair at least three times by the manufacturer or dealer within the express warranty term or

one year from delivery, whichever is the earlier date, and the defect still exists. W.Va.Code § 46A–6A–5(a) (1986)." Syllabus Point 4, *Adams*.

(2) "An alternate method of proving 'a reasonable number of attempts' to fix the vehicle is available if, within the express warranty term or the one year period following delivery, whichever is the earlier date, the vehicle is out of service by reason of repair for a cumulative total of thirty or more days. W.Va.Code § 46A–6A–5(a) (1986)." Syllabus Point 5, *Adams*.

(3) "If a defect is one 'likely to cause death or serious bodily injury ...,' then one failed attempt by the manufacturer or dealer to repair the defect, within the earlier date of either the express warranty period or one year from the original delivery, is sufficient to satisfy W.Va.Code § 46A–6A–3(b) and require the manufacturer to replace the flawed vehicle with a comparable new motor vehicle which conforms to the express warranties." Syllabus Point 3, *Adams*.

Subsection (c) of *W.Va.Code*, 46A–6A–5 [1984], provides:

The presumption that a reasonable number of attempts have been undertaken to conform a new motor vehicle to the applicable express warranties applies against a manufacturer only if the manufacturer has received prior written notification from or on behalf of the consumer and has had at least one opportunity to cure the defect alleged.

Mr. Bostic argues that Mallard's duty under *W.Va.Code*, 46A–6A–3 [1984], to re-

---

**4.** *W.Va.Code*, 46A–6A–5(a) and (b) [1984] provides:

(a) It is presumed that a reasonable number of attempts have been undertaken to conform a new motor vehicle to the applicable express warranties, if the same nonconformity has been subject to repair three or more times by the manufacturer, its agents or its authorized dealers within the express warranty term or during the period of one year following the date of original delivery of the motor vehicle to the consumer, whichever is the earlier date, and the nonconformity continues to exist, or the vehicle is out of service by reason of repair for a cumulative total of thirty or more calendar days during the term

or during the one-year period, whichever is the earlier date.

(b) If the nonconformity results in a condition which is likely to cause death or serious bodily injury if the vehicle is driven, it is presumed that a reasonable number of attempts have been undertaken to conform the vehicle to the applicable express warranties if the nonconformity has been subject to repair at least once by the manufacturer within the express warranty term or during the period of one year following the date of original delivery of the motor vehicle to a consumer, whichever is the earlier date, and the nonconformity continues to exist.

pair or replace the vehicle, was triggered in all three ways, namely, (1) the failure to fix the recreational vehicle after at least three attempts, (2) the excessive number of days the vehicle was out of service, and (3) because the defect was likely to cause death or serious bodily injury, Mallard's one failed attempt to repair the defect. The record indicates that the recreational vehicle was returned at least three times for repair of the uneven weight, once to American Campers, once to Ben's RV and once to General Truck Sales. The record also indicates that the recreational vehicle was out of service one time for 39 days although the reason for the 39 day repair is not clear. Mr. Bostic also maintains that because the defect was likely to cause death or serious bodily injury, Mallard's one failed attempt at repairing the defect was sufficient to trigger *W.Va.Code,* 46A–6A–3 [1984].

■ Once a consumer establishes that the manufacturer failed in its duty to repair or replace the vehicle as specified in *W.Va.Code,* 46A–6A–3 [1984], then *W.Va. Code,* 46A–6A–4(a) [1984], provides that the consumer has a cause of action against the manufacturer, provided the manufacturer has had the notice and opportunity to repair the defect as required by *W.Va. Code,* 46A–6A–5(c) [1984]. *W.Va.Code,* 46A–6A–4(a) [1984], states:

> If the nonconformity results in substantial impairment to the use or market value of the new motor vehicle and the manufacturer has not replaced the new motor vehicle pursuant to the provisions of section three [§ 46A–6A–3] of this article, or if the nonconformity exists after a reasonable number of attempts to conform the new motor vehicle to the applicable express warranties, the consumer shall have a cause of action against the manufacturer in the circuit court of any county having venue.

Subsection (b) of *W.Va.Code* 46A–6A–4 [1984], provides the following remedies:

> In any action under this section, the consumer may be awarded all or any portion of the following:

> (1) Revocation of acceptance and refund of the purchase price, including, but not limited to, sales tax, license and registration fees, and other reasonable expenses incurred for the purchase of the new motor vehicle, or if there be no such revocation of acceptance, damages for diminished value of the motor vehicle;

> (2) Damages for the cost of repairs reasonably required to conform the motor vehicle to the express warranty;

> (3) Damages for the loss of use, annoyance or inconvenience resulting from the nonconformity, including, but not limited to, reasonable expenses incurred for replacement transportation during any period when the vehicle is out of service by reason of the nonconformity or by reason of repair; and

> (4) Reasonable attorney fees.

*W.Va.Code,* 46A–6A–4 [1984], does not dictate a particular remedy; rather, the fact finder, the jury in this case, is able to select one or more of the remedies provided in the statute.

■ In the present case, Mr. Bostic maintains that the recreational vehicle's defect was likely to cause death or serious bodily injury if the vehicle was driven. However, although the evidence shows that the recreational vehicle was defective, the seriousness of the defect was strongly contested. Mr. Bostic and his expert witness maintained that the uneven weight made the recreational vehicle unsafe to drive. Mallard's expert maintained that the vehicle's chassis was level and that the uneven appearance was cosmetic and repairable. There was even a disagreement on how to compensate if the uneven weight resulted in a non-level chassis. The jury, by awarding damages as opposed to rescinding the contract, indicated their belief that the defect was cosmetic and repairable and we find that there is sufficient evidence to justify the jury's decision.

We also reject Mr. Bostic's contention that our holding in Syllabus Point 3, *Adams, supra,* requires the court to limit the remedy, when a defect is likely to cause death or serious bodily injury, to the replacement of the flawed vehicle with a com-

parable new vehicle. Syllabus Point 3, *Adams*, reads the provisions of *W.Va. Code*, 46A–6A–3 and 5 [1984], *in pari materia*, in order to determine when a manufacturer's duty under *W.Va.Code*, 46A–6A–3(b) [1984], is triggered under the provisions of *W.Va.Code*, 46A–6A–5 [1984]. *See infra* p. 9.

Syllabus Point 3 of *Adams* does not address the remedies section of our lemon law, *W.Va.Code*, 46A–6A–4 [1984]. We, therefore, reject Mr. Bostic's argument that the only remedy allowed when a defect is likely to cause death or serious bodily injury is revocation and refund of the purchase price.

## II

Mr. Bostic also argues that he is entitled to an award of the costs of his expert witness. The record shows that the first version of the jury verdict was for "$4,659.00 + Eng Fees, Lawyer Fees, Fix Cap & bumper." When this first verdict was rejected because it was not a sum certain, the jury returned an award of $10,-000 and the circuit court awarded Mr. Bostic $5,000 for his attorney's fee. The value of the jury's first award is about $18,000 or about $3,000 more that the second award. The record indicates that except for knowing the per hour fee, the jury did not know the costs of Mr. Bostic's expert witness.

■ First, we note that Mr. Bostic is not entitled to an award of costs for his expert witness under *W.Va.Code*, 46A–6A–4(b) [1984]. *See infra* pp. 10–11. Although the consumer may be awarded "Reasonable attorney fees" (*W.Va.Code*, 46A–6A–4(b)(4) [1984]), our lemon law statute does not provide for the award of other costs incurred by a consumer in the prosecution of a case.

■ Mr. Bostic next argues that he is entitled to receive his costs under the Magnuson–Moss Warranty Act, [15 U.S.C.A. Sec. 2304]. The Magnuson–Moss Warranty Act, specifically, 15 U.S.C.A. § 2310(d)(2) allows the consumer "to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred ... in connection with the ... action...." However, Mr. Bostic sued under *W.Va.Code*, 46A–6A–1 *et seq.* [1989] and not the Magnuson–Moss Warranty Act. In *Adams*, we noted that our lemon law, while similar in intent to the Magnuson–Moss Warranty Act was "[m]uch more specific and remedy-oriented." *Id.*, 182 W.Va. at 238, 387 S.E.2d at 292. We also note that the legislature could have used language similar to the language of Magnuson–Moss Warranty Act if it had wanted to award costs.

■ Mr. Bostic next maintains that he is entitled to the award of his costs under equity. Although we have recognized that costs can be awarded "without express statutory authorization when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons" (*Sally–Mike Properties v. Yokum*, 179 W.Va. 48, 365 S.E.2d 246, 249 (1986)), the record, in the present case, does not demonstrate the requisite behavior. *See also, Muzelak v. King Chevrolet, Inc.*, 179 W.Va. 340, 368 S.E.2d 710 (1988) (discussing awards of costs in equity and under the Magnuson–Moss Warranty Act). The record does indicate that the recreational vehicle's problem was not assessed by Mallard until their expert examined the vehicle on the morning of the last day of trial. Although Mallard's failure to assess the recreational vehicle's problem is less than optimal behavior, it does not show bad faith, vexatious, wanton or oppressive action.

However, the jury's first verdict indicated that Mr. Bostic should receive about $4,600 in addition to repair costs and certain litigation costs, namely attorney's fees and expert witness fees. The jury's second version, made without information on the expert witness fee, was for $10,000. Because of the jury's first verdict, the trial judge should have awarded an *additur* of $3,000 when the expert witness fee was known, or, if objected to by Mallard, a new trial.

The relationship between the right to a trial by a jury and an *additur* was recently raised in *Boyd v. Bulala*, 672 F.Supp. 915, 921 (W.D.Va.1987) (considering the constitutionality of Virginia's damage cap statute). In *Boyd*, the federal district court held that *"[a]dditur* is prohibited under the seventh amendment because it would require a plaintiff 'to forego his constitutional right to the verdict of a jury' and accept instead an assessment 'partly made ... by a tribunal which has no power to assess.' *Dimick v. Schiedt*, 293 U.S. [474] at 487, 55 S.Ct. [296] at 301 [79 L.Ed. 603] [1935]." [5] In *Dimick*, the Supreme Court examined the rules of common law established in 1791, the adoption date for the seventh amendment, and found no authority "to increase, either absolutely or conditionally, the amount fixed by the verdict of a jury in an action at law, with certain exceptions." *Id.* at 477, 55 S.Ct. at 297. The Supreme Court held that the jury's province is "to determine the facts ... [and] where the verdict is too small, an increase by the court is a bald addition of something which in no sense can be said to be included in the verdict." *Id.* at 486, 55 S.Ct. at 301. *See, Tull v. United States*, 481 U.S. 412, 426, 107 S.Ct. 1831, 1840, 95 L.Ed.2d 365 (1987) (stating that the Seventh Amendment preserves "the basis institution of jury trial in only its most fundamental elements"); *Colgrove v. Battin*, 413 U.S. 149, 157, 93 S.Ct. 2448, 2453, 37 L.Ed.2d 522 (1973) (holding that the determination of damages is part of the "substance of the common-law right of trial by jury").

Although the seventh amendment's right to trial by jury in federal courts has not been extended to the states through the fourteenth amendment (*Letendre v. Fugate*, 701 F.2d 1093 (4th Cir.1983), *cert. denied*, 464 U.S. 837, 104 S.Ct. 125, 78 L.Ed.2d 122 (1983)), our State *Constitution* has an analogous provision. *W.Va. Const.*, Art. III, § 13 provides:

> In suits at common law, where the value in controversy exceeds twenty dollars exclusive of interest and costs, the right of trial by jury, if required by either party, shall be preserved; and in such suit in a court of limited jurisdiction a jury shall consist of six persons. No fact tried by a jury shall be otherwise reexamined in any case other than according to rule of court or law.

The question presented is: Does a $3,000 *additur* infringe upon the jury's fact-finding function of assessing damages in this case? We first note that *remittitur*, the reduction of an excessive award, does not raise the same concerns because with a *remittitur* the jury has approved at least the award finally given (*Dimick* 293 U.S. at 486, 55 S.Ct. at 301); with an *additur*, however, the jury generally has failed to award an adequate amount.[6] Fortunately, this concern about a lack of jury approval is not directly raised under the facts of this case and, therefore, we need not address

---

**5.** The seventh amendment to the *U.S. Constitution* provides:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

**6.** The following cases approve of the use of a conditional additur: *Runia v. Marguth Agency, Inc.*, 437 N.W.2d 45 (Minn.1989); *Jehl v. Southern Pac. Co.*, 66 Cal.2d 821, 59 Cal.Rptr. 276, 427 P.2d 988 (1967); *Fisch v. Manger*, 24 N.J. 66, 71–80, 130 A.2d 815 (1957); *Markota v. East Ohio Gas Co.*, 154 Ohio St. 546, 97 N.E.2d 13 (1951); *Smith v. Ellyson*, 137 Iowa 391, 115 N.W. 40 (1908); *Volker v. First Nat'l. Bank of Tecumseh*, 26 Neb. 602, 42 N.W. 732 (1889) (jury mistake in computation); *Caudle v. Swanson*, 248 N.C. 249, 103 S.E.2d 357 (1958); *Clausing v.*

*Kershaw*, 129 Wash. 67, 224 P. 573 (1924); *Bodon v. Suhrmann*, 8 Utah 2d 42, 327 P.2d 826 (1958); *Cordes v. Hoffman*, 19 Wis.2d 236, 120 N.W.2d 137 (1963) (trial court empowered to grant a reasonable amount); *O'Conner v. Papertsian*, 309 N.Y. 465, 131 N.E.2d 883 (1956); *Odom v. Parker*, 547 So.2d 1155 (Miss.1989) (requiring acceptance by both parties); *Jacobson v. Manfredi*, 100 Nev. 226, 679 P.2d 251 (1984); *Wactor v. Picken Lumber Co.*, 505 So.2d 815 (La.App.1987), *cert. denied*, 508 So.2d 827 (La.1987); *Fraher v. Inocencio*, 121 Ill.App.3d 12, 76 Ill.Dec. 602, 459 N.E.2d 11 (1984); *W.T. Rawleigh Co. v. Hannon*, 32 Ala.App. 147, 22 So.2d 603 (1945).

But see, *Roeder v. Aetna Life & Casualty Co.*, 738 S.W.2d 938 (Mo.App.1987); *Raymond L.J. Riling, Inc. v. Schuck*, 346 Pa. 169, 29 A.2d 693 (1943).

whether an *additur* without a jury award of damages would infringe upon the right to a trial by jury. *See, Earl T. Browder Inc. v. County Court of Webster County*, 145 W.Va. 696, 702, 116 S.E.2d 867, 871 (1960) (stating the *remittitur* rule); *Roberts v. Stevens Clinic Hosp., Inc.*, 176 W.Va. 492, 345 S.E.2d 791 (1986) (entering a conditional *remittitur* of $7,000,000); *Jordan v. Bero*, 158 W.Va. 28, 210 S.E.2d 618 (1974) (entering a conditional *remittitur* of $4,977.47). In the present case the jury, in its first verdict, attempted to give the higher award but, because of a lack of information needed to estimate the expert witness fee, the second verdict resulted in a smaller award to Mr. Bostic. The deference to the jury's fact finding function does not extend to inadequately informed estimates of expert witness fees.

■ We find that when a jury returns a verdict that lacks a total definitive amount but specifies an amount for damages and payment of specific expenses and costs, and after being directed to give a definitive sum, renders a measurably lower verdict than their first effort by virtue of the jury's failure to understand the cost of an expert witness's fee, it is appropriate for the trial court to enter an *additur* to assure that the injured party receives the damages originally awarded, or, at the election of the defendant, to order a new trial on the issue of damages alone.

■ In the present case, therefore, an *additur* of $3,000 is necessary in order to assure that Mr. Bostic receives the jury's assessment of his damages as shown by the jury's first verdict. In the first verdict, the jury assessed Mr. Bostic's damages to be $4,659 or about 10% of the purchase price of the recreational vehicle and the jury also attempted to award repair cost and the expert witness's fee. The jury's second verdict was an attempt to estimate repair and litigation costs and still provide Mr. Bostic with some damages. The record indicates that although the jury was given some estimates of repair, the expert witness fee was not known to the jury. Therefore, we hold that in this case a $3,000 *additur*, with Mallard given the op-

tion to request a new trial on the issue of damages alone, is proper because "both parties remain entitled, as they were entitled in the first instance, to have a jury properly determine the question of liability and the extent of the injury by an assessment of damages." *Dimick*, 293 U.S. at 486, 55 S.Ct. at 301.

For the above stated reasons, the decision of the Circuit Court of Raleigh County is reversed, and the case is remanded for proceedings consistent with this opinion and for an award of reasonable attorney's fees for the prosecution of this appeal.

Reversed and Remanded.