969 P.2d 305 (1998)
In the Matter of the Honorable Randy P. VARAIN, Justice of the Peace, Schurz Township, County of Mineral, State of Nevada.
No. 30867.
Supreme Court of Nevada.
December 9, 1998.
*306 Dean R. Heidrich, Reno, for appellant.
Fred Berkley, Special Prosecutor, Las Vegas, for respondent.

OPINION
ROSE, J.
Justice of the Peace Randy Varain (Judge Varain) was issued a public written reprimand and ordered to complete a course in judicial ethics after the Nevada Commission on Judicial Discipline (the Commission) determined that Judge Varain had violated several canons of the Nevada Code of Judicial Conduct. The Commission found that Judge Varain had engaged in an improper ex parte contact with an incarcerated criminal defendant, and had reassigned the defendant's case to another judge, after the defendant and the State had entered into a plea agreement.
Judge Varain now appeals from the Commission's decision, arguing that his contact with the defendant was justified due to his concern for the defendant's personal safety. Additionally, Judge Varain argues that his *307 administrative reassignment of the defendant's case was warranted because he had not been informed that the defendant and the State had entered into a plea agreement. We agree. Accordingly, we reverse the Commission's decision and vacate its imposition of discipline.

FACTS
Judge Varain serves as a part-time Justice of the Peace in Schurz Township, Mineral County. In January 1996, Bonnie Hughes (Hughes), the Schurz Justice's Court Clerk, discovered that her fourteen-year-old daughter had become sexually active with a man who was in his mid-twenties. Judge Varain knew both Hughes' daughter and the man with whom she had become sexually involved.
Upon learning of her daughter's involvement with a much older man, Hughes went to Judge Varain to ask his advice. Judge Varain recommended that Hughes seek counseling for her daughter, and instructed her to inform the District Attorney's office of her allegations. Instead, Hughes contacted the Mineral County Sheriff's Department. Hughes had close ties to the sheriff's department because her ex-husband, another close personal friend named Pat Thyne (Dep.Thyne), and her current boyfriend all currently served as deputy sheriffs for Mineral County.
On Friday, February 9, 1996, Hughes went to Dep. Thyne's home to discuss the matter. Several hours later, at approximately 2:50 a.m., Dep. Thyne put himself on duty, proceeded to the man's residence, and arrested him. Dep. Thyne contacted Judge Varain at approximately 5:00 a.m. to report his actions and inform him that the defendant was in custody.
Due to the nature of the alleged crime and Hughes' close ties to the Mineral County Sheriff's Department, Judge Varain became concerned for the defendant's personal safety. At approximately 9:00 a.m., Judge Varain proceeded to the county jail to check on the defendant's welfare; upon his arrival, two Nevada Highway Patrol officers and a Mineral County deputy sheriff accompanied Judge Varain to the defendant's cell. In response to Judge Varain's questioning, the defendant indicated that he had not been harmed. With the approval of the district attorney, the defendant was then released from custody on his own recognizance. Thereafter, Judge Varain recused himself from the case, and the matter was reassigned to Justice of the Peace Paul Freitag (Judge Freitag) and set for arraignment on June 7, 1996.
In April 1996, Karen Boyles (Boyles) replaced Hughes as the Schurz Justice's Court Clerk. Prior to the June 7th hearing, the district attorney and the defendant reached a plea agreement whereby in exchange for a guilty plea on a reduced charge, the defendant would receive probation and a suspended jail sentence. At the June 7, 1996, preliminary hearing, the parties informed Judge Freitag that they had reached a plea agreement; Judge Freitag consented to the resolution of the case in this manner and instructed the parties to submit the written plea agreement to him in Sparks at a later date. Boyles, who was relatively new in her position as Schurz Justice's Court Clerk, did not know that the parties had entered into a plea agreement.
After this hearing, Boyles approached Judge Varain and informed him that the parties had left the courthouse without informing her of any decisions that had been made. Consequently, both she and Judge Varain were unaware that the matter had been resolved by way of a plea agreement. Due to their lack of knowledge in the matter, Judge Varain instructed Boyles to assign the case to a different Justice of the Peace, and to draft a letter to the parties informing them of the court's action.
After receiving Judge Varain's letter dated June 12, 1996, the district attorney responded by letter dated June 13, 1996.[1] Shortly *308 thereafter, Judge Varain responded to the district attorney's letter.[2] Additionally, on June 17, 1996, the defendant's counsel sent a letter to Boyles indicating that any further court appearances were unnecessary in light of the parties' June 7, 1996, plea agreement before Judge Freitag.
Eventually, the district attorney dismissed all criminal charges against the defendant after the different Justice of the Peace failed to appear at the rescheduled hearing. Thereafter, Hughes filed a complaint with the Commission alleging that Judge Varain had committed judicial misconduct through his handling of the matter. On April 7, 1997, formal charges were filed before the Commission, alleging that Judge Varain had violated numerous Canons of the Nevada Code of Judicial Conduct by conducting an ex parte visitation with the defendant while he was in jail, and by reassigning the case to a different Justice of the Peace after the parties had entered into a plea agreement before Judge Freitag.
On June 24, 1997, the Commission conducted a formal hearing regarding the allegations against Judge Varain. At this hearing, Judge Varain denied that he had done anything improper, and reiterated that he had visited the defendant while he was in custody due to the unusual circumstances surrounding his 3:00 a.m. arrest and concerns for the defendant's personal safety. Additionally, Boyles testified that Judge Varain had instructed her to set another court date before a different Justice of the Peace because neither she nor Judge Varain had any knowledge of the parties' June 7th plea agreement before Judge Freitag.
On August 7, 1996, the Commission entered its findings of fact and conclusions of law. The Commission found that Judge Varain had improperly involved himself in a criminal matter in which he personally knew both the alleged victim and the defendant. Further, the Commission found that by visiting the jail to check on the defendant's welfare, Judge Varain had engaged in an improper ex parte communication. Lastly, the Commission found that Judge Varain acted improperly by reassigning the case to a different Justice of the Peace after the parties had reached a plea agreement before Judge Freitag on June 7, 1996.
Based on its findings of fact, the Commission concluded that Judge Varain had violated Canons 2(A), 2(B), 3(B)(1), 3(B)(7), and 3(E)(1)(a) of the Nevada Code of Judicial Conduct. Accordingly, the Commission issued a public written reprimand against Judge Varain and ordered him to complete a judicial ethics class at the National Judicial College.
Judge Varain now appeals from the Commission's decision and imposition of discipline.

DISCUSSION

Judge Varain's limited involvement in the case, and his communication with an incarcerated criminal defendant, did not constitute violations of the Nevada Code of Judicial Conduct.
The Commission concluded that Judge Varain's direct involvement in the case constituted violations of Canons 2(A),[3] 2(B),[4] and *309 3(B)(1)[5] of the Nevada Code of Judicial Conduct because he personally knew the alleged victim, the victim's mother, and the defendant in the case. On appeal, Judge Varain argues that his direct involvement did not affect the merits of the State's prosecution, but was instead narrowly limited to ensuring the personal safety of an incarcerated defendant who had been arrested under highly unusual circumstances. Further, Judge Varain argues that because he promptly disqualified himself from the case after ensuring that the defendant had not been harmed, his limited involvement was both ethical and appropriate. We agree.
This court's review of the Commission's factual findings is confined "to a determination of whether the evidence in the record as a whole provides clear and convincing support for the commission's findings." Goldman v. Nevada Comm'n on Judicial Discipline, 108 Nev. 251, 267, 830 P.2d 107, 117-18 (1992) Although we must apply a deferential standard of review to the Commission's factual determinations, we are not bound by the Commission's conclusions of law. Id.
A judge need not disqualify himself merely because he is acquainted with the parties appearing before him. Jacobson v. Manfredi, 100 Nev. 226, 230, 679 P.2d 251, 254 (1984). Further, a judge's decision to not voluntarily disqualify himself in the midst of compelling circumstances should be accorded substantial weight and should not be reversed on appeal absent an abuse of discretion. Goldman v. Bryan, 104 Nev. 644, 649, 764 P.2d 1296, 1299 (1988).
In the instant case, we conclude that Judge Varain's limited and direct involvement in the matter did not constitute a violation of the Nevada Code of Judicial Conduct. Although Judge Varain directly involved himself in a case in which he personally knew the alleged victim, the victim's mother, and the defendant, Judge Varain did not have a duty to disqualify himself merely because he knew the parties. See Jacobson, 100 Nev. at 230, 679 P.2d at 254. Further, Judge Varain's limited involvement was directed at the salutary purpose of guaranteeing the personal safety of an incarcerated defendant and not towards affecting the merits of the State's investigation or prosecution. Lastly, because Judge Varain did indeed disqualify himself after taking measures to protect the defendant's personal safety, we conclude that his limited involvement was both appropriate and commendable.
Likewise, we conclude that Judge Varain's brief jailhouse communication with the defendant did not constitute an improper ex parte communication in violation of Canon 3(B)(7)[6] of the Nevada Code of Judicial Conduct. Due to the circumstances surrounding the defendant's 3:00 a.m. arrest by Dep. Thyne, we conclude that exigent circumstances existed which justified Judge Varain's limited jailhouse contact with the defendant for the purpose of ensuring the defendant's personal safety. See In The Matter of Judicial Disciplinary Proceedings Against Aulik, 146 Wis.2d 57, 429 N.W.2d 759, 767 (Wis.1988) (explaining that the prohibition against ex parte contacts is not absolute, and that "[e]xigent circumstances may permit a judge to communicate and act ex parte"). Because Judge Varain limited the scope of his inquiry to the defendant's well-being, his brief communication with the defendant did not affect the substance or merits of the State's prosecution. Accordingly, we conclude that Judge Varain's jailhouse communication with the defendant fell *310 within the purview of the emergency exception contained in Canon 3(B)(7)(a).[7]

Judge Varain did not commit judicial misconduct by administratively reassigning the defendant's case after he had recused himself from the matter and after the parties had entered into a plea agreement.
The Commission concluded that Judge Varain's reassignment of the case to a different Justice of the Peace constituted a violation of Canon 3(E)(1)(a)[8] in light of his previous recusal from the case, and the parties' plea agreement before Judge Freitag on June 7, 1996. On appeal, Judge Varain argues that his administrative reassignment of the case was not evidence of any personal bias, but was instead warranted because neither he nor the Court Clerk knew that the case had been settled. We agree.
The standard for assessing judicial bias is "whether a reasonable person, knowing all the facts, would harbor reasonable doubts about [a judge's] impartiality." PETA v. Bobby Berosini, Ltd., 111 Nev. 431, 438, 894 P.2d 337, 341 (1995); see also Richard E. Flamm, Judicial Disqualification § 5.5 (1996). Whether a judge's "impartiality can reasonably be questioned under an objective standard, however, is a question of law and this court will exercise its independent judgment of the undisputed facts." Berosini, 111 Nev. at 437, 894 P.2d at 341 (citing Flier v. Superior Court (Perkins), 23 Cal.App.4th 165, 28 Cal.Rptr.2d 383, 386 (Ct.App.1994); State v. Rochelt, 165 Wis.2d 373, 477 N.W.2d 659, 661 (Wis.Ct.App.1991)).
Based on the undisputed facts of this case, we conclude that Judge Varain's administrative reassignment of the defendant's case did not constitute a violation of Canon 3(E)(1)(a). While the Commission argues that Judge Varain's reassignment was improper because both the district attorney and defense counsel had informed Judge Varain by letter that the parties had resolved the case by way of a plea agreement, we note that both letters were sent to Judge Varain after he had made the administrative reassignment to a different pro tem judge.
Although Judge Varain did indeed reassign the case to a different judge after he had recused himself and after the parties had entered into a plea agreement, our review of the record indicates that Judge Varain's reassignment was an administrative action that did not affect the merits of the case. Further, as Judge Varain testified, the reassignment was largely the result of miscommunication and his lack of knowledge that the case had been settled. The undisputed facts do not create a reasonable doubt concerning Judge Varain's impartiality. Although Judge Varain's actions in this matter were not entirely appropriate, and he should not have taken remedial action once he learned that the case had been reassigned, we conclude that his actions did not warrant the punishment that was imposed. Consequently, we conclude that Judge Varain's administrative reassignment did not violate Canon 3(E)(1)(a) of the Nevada Code of Judicial Conduct.

CONCLUSION
We conclude that Judge Varain did not violate Canons 2(A), 2(B), and 3(B)(1) by involving himself in a case where he knew the alleged victim, the victim's mother, and the defendant because exigent circumstances existed which warranted his direct, though limited, involvement. Further, we conclude *311 that Judge Varain's jailhouse communication with the defendant did not constitute a violation of Canon 3(B)(7) because Judge Varain's commendable inquiry was limited to ensuring the defendant's personal safety in light of the defendant's highly suspicious 3:00 a.m. arrest. Lastly, we conclude that Judge Varain's reassignment of the case did not constitute a violation of Canon 3(E)(1)(a) in light of Judge Varain's lack of knowledge that the case had been settled, and because the reassignment was administrative in nature.
Based on the foregoing, we reverse the decision of the Nevada Commission on Judicial Discipline, and direct the Commission to withdraw its public reprimand of Judge Varain and to strike its order compelling him to attend a course in judicial ethics.[9]
SPRINGER, C.J., and YOUNG, J., concur.
MAUPIN, J., concurring and dissenting:
The circumstances of this controversy appear unique. I would suggest that only a handful of judicial officers in this state have faced the problem that confronted Judge Varain on the night of the defendant's arrest. The situation was further complicated by the ongoing dispute that existed between Judge Varain and the Mineral County District Attorney, Brian Kunzi.

The jail house visit
I agree that the visit to the jail and the release of the defendant do not warrant discipline. While the concern over the safety of the defendant was probably, in hindsight, exaggerated, I do not believe that Judge Varain should have been disciplined for checking on the inmate's welfare.[1] Further, the release of the inmate, with the apparent agreement of the prosecution, did not undermine Judge Varain's judicial office.

The rescheduled hearing
The negative dynamic between Judge Varain and Mr. Kunzi led, in my view, to a misunderstanding entertained by both over their respective motives. The letters exchanged on June 13 were both ill-advised and calculated to exacerbate the dispute, both parties, of course, being convinced of their respective moral imperatives. Based on the extent of discipline imposed, the commission evidently agrees.
The commission was faced with conflicting evidence in connection with the motives of the protagonists and, most pertinent to these proceedings, the actual intent of Judge Varain when he apparently overrode the disposition of the justice of the peace pro tempore, appointed to sit in his place. First, the letters exchanged with regard to the rescheduling of the hearings clearly indicate the district attorney felt that the judge was intentionally meddling in a matter from which he had disqualified himself. Second, they also confirm the judge's feeling that his judicial prerogatives were under attack. In retrospect, neither was probably true. However, the commission also heard evidence that the letter of June 12, 1996, re-setting the matter, was accompanied by a transcript of the June 7 proceedings. That transcript unequivocally reflected the plea agreement and the fact that the justice of the peace pro tempore would be finally concluding the matter. With this evidence in place (threats by Judge Varain to take the justice of the peace pro tempore to the judicial discipline commission,[2] the ongoing feud between the judge and Mr. Kunzi, and Judge Varain's attitude toward his clerk's behavior), the commission could rightly have concluded that the rescheduling of the hearing before yet another judge constituted improper interference with the process.[3] This finding is further supported *312 by written confirmation provided to Judge Varain that the matter was to be resolved by Judge Freitag. Even after being advised of the negotiated settlement, Judge Varain's refusal to vacate the continued hearing date effectively forced the parties to take the arrangement for approval before a second substitute justice of the peace.[4]
I therefore conclude that the allegations of improper conduct after Judge Varain formally recused himself are supported by substantial evidence. I would note, however, that mitigating circumstances exist upon which the commission could have declined action of any kind. Thus, while I agree that the issuance of a public reprimand may have been unwarranted, the discipline actually imposed seems to account for those mitigating circumstances. Therefore, given their leniency, the disciplinary measures imposed should not be overturned.
NOTES
[1] The district attorney's letter read as follows:

I am in receipt of your letter dated June 12, 1996, and confess I am baffled by its contents. The letter suggests you have entered an order in a matter after you have recused yourself because of a personal conflict of interest. I fail to understand what involvement you can have in this matter, particularly since Judge Freitag has accepted the motions filed in open court on June 7, 1996, and has instructed us to submit the necessary written plea agreement to him for final disposition.
The only valid orders that can be issued must come from Judge Freitag. I must view any other order as tampering. The plea agreement has been made and the matter was continued by Judge Freitag for the purpose of allowing counsel to memorialize the agreement. I believe any order issued by you contravening the arrangements made through Judge Freitag is improper in light of your stated conflict.
[2] Judge Varain's second letter read as follows:

I must advise you that Judge Freitag was requested to set in for one particular day because of a conflict with the [defendant's] case. That case was continued. A new date was set and another Judge was asked to set on that day. Your office does not dictate to this Court on what judge you want to set and hear what cases you want. Any attempt to do so this Court would view as an attempt to control the Judiciary. I fail to see your concern in this matter unless you personally have a reason to interfere with the Court in ensuring an impartial judge in hearing this case.
[3] Canon 2(A) provides:

A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
[4] In relevant part, Canon 2(B) provides:

A judge shall not allow family, social, political or other relationships to influence the judge's judicial conduct or judgment. A judge shall not lend the prestige of judicial office to advance the private interests of the judge or others; nor shall a judge convey or permit others to convey the impression that they are in a special position to influence the judge....
[5] Canon 3(B)(1) provides:

A judge shall hear and decide matters assigned to the judge except those in which disqualification is required.
[6] In relevant part, Canon 3(B)(7) provides:

... A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding....
[7] Canon 3(B)(7)(a) provides:

(a) Where circumstances require, ex parte communications for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits are authorized; provided:
(i) the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication, and
(ii) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond.
[8] Canon 3(E)(1)(a) provides:

(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:
(a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding.
[9] The Honorable Miriam Shearing, did not participate in the decision of this matter.
[1] There was strong evidence that Judge Varain also "demanded" transfer of the inmate. This was clearly inappropriate. In any case, Mr. Kunzi properly advised him in that regard.
[2] The defense attorney, Mr. Scott Freeman, testified to a statement by Judge Varain in that regard.
[3] I also note that Mr. Kunzi and Mr. Freeman disagree as to whether Judge Varain told Mr. Freeman that the defense should not accept any plea negotiation. Mr. Freeman testified that no such statement was made while Mr. Kunzi testified to his belief that such a conversation did, in fact, occur.
[4] Given that the agreement was to be enforced via a "counterplea," no further action by any other judicial officer was necessary.

I would note parenthetically that the ultimate dismissal of the case when the second judge failed to appear for the continued hearing may have been the result of an overreaction by Mr. Kunzi, given that defense counsel apparently remained agreeable to the negotiations.