**Gary Amos McLAUGHLIN, Plaintiffs,**

v.

**CHRYSLER CORPORATION, a foreign corporation, Defendant.**

**No. CIV.A.2:98–CV–115.**

United States District Court, N.D. West Virginia at Elkins.

May 3, 2002.

Gary Amos McLaughlin, Marlinton, Pro se.

Harry F. Bell, Jr., Bell & Bands, PLLC, Charleston, for Chrysler Corporation, defendant.

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MAXWELL, District Judge.

#### I. Procedural History

On or about December 7, 1998, Plaintiff Gary Arnos McLaughlin ("McLaughlin"), commenced this action by filing a verified complaint against named defendant Chrysler Corporation, now known as Daimler-Chrysler Corporation ("DaimlerChrysler"), relying solely on W.Va.Code § 46A–6A–1, *et seq.*, West Virginia's "Lemon Law." ("Lemon Law"). As the motor vehicle in question was purchased in Marlinton, Pocahontas County, West Virginia, by McLaughlin, a West Virginia resident, and was manufactured by defendant Daimler-Chrysler, a Delaware corporation headquartered in Michigan, this Court has jurisdiction on the basis of diversity and is a proper venue for resolution of this action.

DaimlerChrysler filed its Answer denying all liability on or about January 16, 1999.

Thereafter, pursuant to previously-filed motions and notices, McLaughlin's original counsel was allowed to withdraw and new counsel appeared in this action to represent McLaughlin. Discovery proceeded accordingly. On or about June 30, 2000, DaimlerChrysler filed a motion for summary judgment with supporting memorandum. McLaughlin filed his memorandum in opposition on or about October 3, 2000, more than three months later, and DaimlerChrysler filed its reply on or about October 10, 2000.

On November 20, 2000, McLaughlin's second attorney filed a motion to withdraw as counsel, and this Court granted the same on November 20, 2000, ordering McLaughlin to immediately seek the services of new counsel. On or about December 6, 2000, with no notice of appearance having been filed by new counsel, nor any other related communications or filings from McLaughlin, this Court entered an Order directing McLaughlin to, within ten (10) days, advise this Court in writing of his efforts to obtain new counsel or, if new counsel had been obtained, to file a Notice of Appearance of Counsel. This Court received no communications, written or otherwise, from McLaughlin and no Notice of Appearance of Counsel was filed.

No further activity took place in this action, due to the serious, extended illness of Plaintiff, and on January 9, 2002, this Court issued a notice setting a hearing on DaimlerChrysler's motion for summary judgment for January 30, 2002. McLaughlin appeared at this hearing *pro se*, as his counsel who had prepared all filings regarding the instant motion for summary judgment had been allowed to withdraw and he had not secured substitute counsel. DaimlerChrysler appeared by counsel.

After a thorough review of the file record, motions, the memoranda filed in support and opposition thereto, and the applicable law, and upon hearing the arguments of the parties, this Court finds that DaimlerChrysler's motion for summary judgment must be granted and that this action is to be accordingly removed from this Court's docket with prejudice.

## II. *Facts*

On November 6, 1996, McLaughlin purchased a new 1997 Dodge Club Cab 2500 pickup truck ("the vehicle") from Marlinton Motor Sales in Marlinton, Pocahontas County, West Virginia, an authorized DaimlerChrysler dealer. The cost of the vehicle was $28,917.00, and the amount financed was $33,561.60. McLaughlin purchased the vehicle primarily for business purposes related to his motorcycle sales business. The vehicle was sold with DaimlerChrysler's standard express warranty which provided bumper-to-bumper warranty protection for three (3) years or 36,000 miles, whichever came first. On the date of purchase, the vehicle had seventeen (17) miles on the odometer.

Between the date of purchase and June 18, 1997, the vehicle was subject to a number of drive train-related repairs, including repairs for transmission-related problems and complaints. Specifically, there were eight (8) instances of drive train-related repairs, the last being on June 18, 1997. It appears the vehicle was out of service only approximately nine (9) days for reason of repair, with McLauglin receiving a rental vehicle for three (3) of those days. McLaughlin disputes the number of these out-of-service days, claiming much more, but offers no evidence to counter DaimlerChrysler. McLaughlin raised no further complaints and there were no repairs made to the vehicle after June 18, 1997, just over seven (7) months from the date of purchase, at which time the vehicle had

11,182 miles on the odometer. McLaughlin put 11,165 miles on the vehicle between the date of purchase and the final repair.

On or about October 31, 1998, McLaughlin reported the vehicle as stolen, and filed a claim with his insurance company, State Farm Fire & Casualty Company ("State Farm"). On or about December 15, 1998, State Farm paid McLaughlin and his lender a total of $28,228.75, based on State Farm's computation of the market value of the vehicle derived from automotive industry sources, primarily data provided by the N.A.D.A. ("National Automobile Dealers Association"), considered the definitive industry source on used vehicle valuations.

Prior to receiving the aforesaid insurance payment, McLaughlin filed his verified complaint initiating this Lemon Law action on December 7, 1998. McLaughlin's verified complaint specifically states he purchased the vehicle primarily for purposes of buying and selling motorcycles at auctions for his business. He seeks as damages a full refund on the vehicle and damages for loss of use comprised almost entirely of his claimed lost profits of $616,000.00, as well as attorney fees and costs. DaimlerChrysler has filed its motion for summary judgment, and the issue has been fully briefed by the parties.

### III. *DaimlerChrysler's Motion for Summary Judgment*

### A. *Contentions of the Parties*

### 1. **DaimlerChrysler's Contentions**

DaimlerChrysler contends McLaughlin cannot bring a cause of action under the Lemon Law as he is not a "consumer" as defined by the statute, specifically W.Va. Code § 46A–6A–2(1), because the vehicle was purchased primarily for business purposes and McLaughlin is claiming lost profits as the majority of his damages.

In addition, DaimlerChrysler contends that, regardless of the repair history of the vehicle, McLaughlin cannot show a sub-stantial impairment to the use or market value of the vehicle. DaimlerChrysler contends it offers undisputed evidence to support its arguments in this regard.

DaimlerChrysler's contention that there is no substantial impairment to the use of the vehicle is based on the argument that average use of a motor vehicle, as evinced by the standard express warranty term of three (3) years/36,000 miles, is 12,000 miles per year, or 1000 miles per month, and the fact that McLaughlin put 11,165 miles on the vehicle in just over seven (7) months of operation between the date of purchase and the date of the final repair. Accordingly, DaimlerChrysler contends McLaughlin's use of the vehicle far exceeded average use, and thus he cannot claim a substantial impairment to his use of the vehicle.

DaimlerChrysler's contention that there is no substantial impairment to the market value of the vehicle is based on the fact that McLaughlin offers no evidence of the market value of the vehicle with the presence of the alleged nonconformity or any evidence of market value for a like vehicle with no nonconformities present. Thus, it is argued that McLaughlin can make no showing of a substantial impairment to the market value. DaimlerChrysler further posits that the only evidence on the market value of the vehicle, namely the total of the insurance payment made to McLaughlin and his lender after theft of the vehicle in October 1998, has been discovered by DaimlerChrysler itself, with no cooperation or assistance from McLaughlin. DaimlerChrysler argues that the insurance payment, equaling or exceeding the actual market value of the vehicle at the time of the theft, clearly shows there was no substantial impairment to its market value resulting from the vehicle's condition or otherwise.

DaimlerChrysler further contends that McLaughlin has refused to provide discoverable information or offer evidence on the vehicle's theft or the resulting insurance payment for the very reason that this information clearly refutes McLaughlin's claims that he suffered a substantial impairment to the market value of the vehicle. It is further contended that McLaughlin's reasoning for refusing to produce such information or evidence, that the same will be used to reduce his damages claim and that such evidence is precluded by the collateral source rule, is fundamentally flawed. DaimlerChrysler contends this a contractbased action, not one sounding in tort, and thus the collateral source rule is not applicable and an offset would be appropriate. Further, it contends that the information and evidence shows there was not a substantial impairment to the market value of the vehicle, and thus is offered and is relevant for purposes other than and in addition to offsetting McLaughlin's damages claim.

Finally, DaimlerChrysler makes a procedural argument in support of its motion for summary judgment. It asserts that McLaughlin failed to file a timely response to its motion for summary judgment as provided for in the civil rules, and thus McLaughlin's arguments set forth therein must be disregarded.

Based on the foregoing, DaimlerChrysler contends that summary judgment is appropriate in this case.

## 2. McLaughlin Contentions

McLaughlin counters DaimlerChrysler's contentions regarding his standing under the Lemon Law by arguing that he does indeed fall within the definition of a "consumer" under the Lemon Law because business vehicles are not expressly exempt from Lemon Law protection, and because he qualifies as a "consumer" because he is a person entitled to enforce the warranty on the vehicle. He claims his lost income qualifies as damages which can be awarded under the Lemon Law as loss of use and annoyance damages. He also argues that he the vehicle was used for household and personal reasons in addition to his business, and this also satisfies the statute's definition of a "consumer."

In attempting to refute DaimlerChrysler's contention that there is no evidence of. substantial impairment to the use of the vehicle, McLaughlin relies solely on the repair history of the vehicle and concludes it is clear that his use was substantially impaired due to his inability to use the same while repairs were being made. Specifically, he argues that his use was substantially impaired because he satisfies the repair attempt standards set forth in W.Va.Code § 46A–6A–5 in that the vehicle was unsafe to drive, it was subject to more than three repair attempts within the first year following delivery, and it was out of service in excess of 30 days for reason of repair, and thus he is entitled to take his case to a jury. McLaughlin does not address DaimlerChrysler's argument that the excessive mileage he placed on the vehicle over the first seven (7) months of ownership clearly shows his use of the vehicle was not substantially impaired.

In regard to the issue of substantial impairment to the vehicle's market value, McLaughlin goes no further than to argue that he satisfies that requirement of the Lemon Law. He offers no evidence or argument to refute DaimlerChrysler's argument that he has failed to show a substantial impairment to the market value of the vehicle or that the insurance payment made after the vehicle was stolen indicates there was no substantial impairment to the market value. The Court does note however, that, as indicated and addressed by DaimlerChrysler, the record in this case shows that McLaughlin has taken the position in other filings, relating to discovery

and witnesses, that any evidence of the insurance payment he received may not be considered by a jury or this Court as such consideration would violate the collateral source rule.

McLaughlin does not dispute the filing date of his response to DaimlerChrysler's motion for summary judgment and does ·not make any arguments in response to DaimlerChrysler's position that his response must be disregarded as the same was not timely filed.

Based on the foregoing, McLaughlin contends that there exist issues of fact in this case sufficient to allow the case to go to a jury, and thus summary judgment is inappropriate and DaimlerChrysler's motion for the same must be denied.

## B.  *Applicable Law*

### 1.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) states in pertinent part that summary judgment "...shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the movant, for it must be obvious that there is no rational trier of fact that could find for the non-moving party. *See Miller v. Federal Deposit Ins. Corp.*, 906 F.2d 972, 974 (4th Cir.1990). Any permissible "'...inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), *quoting United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

However, "[t]he mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a fair-minded jury could return a verdict for the party, and "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987), *quoting Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511. Such evidence must consist of facts which are material, meaning that the facts might affect the outcome of the suit under applicable law, as well as genuine, meaning that they create fair doubt rather than encourage mere speculation. *See Anderson*, 477 U.S. at 248–49, 106 S.Ct. at 2510; *see also Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).

### 2.  West Virginia's "Lemon Law"

West Virginia Code § 46A–6A–1, *et seq.*, the "Lemon Law," was enacted to place a duty on motor vehicle **manufacturers** "...to meet their obligations and responsibilities under the terms of the express **warranties** extended to the **consumers** in this State." W.Va.Code § 46A–6A–1(1)(emphasis added); *see also* syl. pt. 1, *Adams v. Nissan Motor Corp.*, 182 W.Va. 234, 387 S.E.2d 288 (1989); syl. pt. 1, *Bostic v. Mallard Coach Co., Inc.*, 185 W.Va. 294, 406 S.E.2d 725 (1991), *quoting Adams, supra*, at syl. pt. 1.

Under the Lemon Law, " '[c]onsumer' means the **purchaser**, other than for purposes of resale, of **a new motor vehicle** purchased in this State, used *primarily* **for personal, family or household purposes**, a person to whom *the* **new motor**

**vehicle is transferred for the same purposes** during the duration of *the* **express warranty applicable to *the* motor vehicle** and any other person entitled by the terms of *the* warranty to enforce the obligations of *the* warranty." W.Va.Code § 46A–6A–2(1)(emphasis added).

" 'Manufacturer' means a person engaged in the business of manufacturing, assembling or distributing motor vehicles, who will, under normal business conditions during the year, manufacture, assemble or distribute **to dealers** at least ten new motor vehicles." W.Va.Code § 46A–6A–2(2)(emphasis added).

" 'Manufacturer's express warranty' and 'warranty' mean the **written warranty of the manufacturer of a new motor vehicle** of its condition and fitness for use, including any terms or conditions precedent to the enforcement of obligations under **that warranty**...." W.Va.Code § 46A–6A–2(3)(emphasis added).

In order for manufacturers to meet the obligations of their new vehicle warranties, the Lemon Law imposes certain duties on manufacturers. West Virginia Code § 46A–6A–3 imposes the duty to repair or replace a new motor vehicle which does not conform to the warranty. However, further analysis shows this code section actually imposes two cumulative duties on new motor vehicle manufacturers relating to their warranty obligations to consumers, the first requiring repair to conform the vehicle to the warranty subject to certain conditions, and the second requiring replacement of the motor vehicle, subject to certain conditions, if repairs cannot bring the vehicle into conformity with the warranty. W.Va.Code § 46A–6A–3(a) and (b); *see also Adams,* at 238, 387 S.E.2d at 292; *Bostic,* at 297–98, 406 S.E.2d at 728–29.

Specifically, the first duty requires that if a new motor vehicle purchased by a West Virginia consumer does not conform to the express warranty and the consumer

reports the problem to the manufacturer or its agent or authorized dealer within the duration of the express warranty term or within one year after taking delivery of the vehicle, which ever is later, the manufacturer, its agent, or its authorized dealer shall make repairs necessary to conform the vehicle to the applicable express warranty, regardless of whether the repairs are made after expiration of the warranty. W.Va.Code § 46A–6A–3(a); *Adams,* at 238, 387 S.E.2d at 292; *Bostic,* at 297–98, 406 S.E.2d at 728–29.

The subsequent, cumulative duty requires that if the manufacturer, its agents, or its authorized dealers are unable to conform the new motor vehicle to its express warranty by repairing or correcting any condition or defect, i.e. nonconformity, as required by W.Va.Code § 46A–6A–3(a), and the nonconformity substantially impairs the use or market value to the consumer after a **reasonable number of repair attempts**, the manufacturer must replace the new motor vehicle with a comparable new motor vehicle which does conform to the express warranty. W.Va.Code § 46A–6A–3(b); *Adams,* at 238, 387 S.E.2d at 292; *Bostic,* at 297–98, 406 S.E.2d at 728–29.

The Lemon Law, at W.Va.Code § 46A–6A–5, "...then **defines** 'a **reasonable number of attempts**' " as used in various parts of the statute, "...which **must** be undertaken **before the manufacturer is liable**..." for breach of its Lemon Law duties to repair or replace the consumer's new motor vehicle. *Adams,* at 238, 387 S.E.2d at 292, *citing* W.Va.Code § 46A–6A–5 (emphasis added); *see also Bostic,* at 298, 406 S.E.2d at 729, *citing* W.Va.Code §§ 46A–6A–5(a) and (b) ("W.Va.Code, 46A–6A–5(a) and (b), provide that the manufacturer's duty..." is "triggered by" repair attempt definitions set forth in those code sections). West Virginia Code

§§ 46A–6A–5(a) and (b) provide three alternatives by which "a reasonable number of attempts" can be established by the consumer.

First, "...if the **same nonconformity** has been subject to repair three or more times by the manufacturer, its agents or its authorized dealers within the express warranty term or during the period of one year following the date of original delivery of the motor vehicle to the consumer, **whichever is the earlier date,** and the **nonconformity continues to exist...**", a consumer's showing of the same will satisfy the requirement of a reasonable number of repair attempts. W.Va.Code § 46A–6A–5(a)(emphasis added); *see also Adams, supra,* at syl. Pt. 4; *see also Bostic,* at 298, 406 S.E.2d at 729, *citing Adams.*

Next, if "...the vehicle is out of service by **reason of repair** for a cumulative total of thirty or more calendar days during the term or during the one-year period, whichever is the earlier date[,]" the consumer likewise satisfies the requirement of a reasonable number of repair attempts. W.Va. Code § 46A–6A–5(a) (emphasis added); *see also Adams, supra,* at syl. Pt. 5; *see also Bostic,* at 298, 406 S.E.2d at 729, *citing Adams.*

Finally, "[i]f the nonconformity results in a condition which is likely to cause death or serious bodily injury **if the vehicle is driven...**" and the nonconformity has been subject to one (1) failed repair attempt within the express warranty term or the one-year period, whichever is earlier, the repair attempt requirement is satisfied. W.Va.Code § 46A–6A–5(b)(emphasis added); *see also Adams, supra,* at syl. pt. 3; *see also Bostic,* at 298, 406 S.E.2d at 729, *citing Adams.*

However, West Virginia's Lemon Law also imposes a duty on the consumer which must be met before the repair attempt definitions or standards can be used against a manufacturer in a Lemon Law action. Specifically, the foregoing standards of proof, the only methods by which a consumer can show a "reasonable number of attempts," are contingent upon whether the "...the **manufacturer** has received **prior** written notification from or on behalf of the consumer and has had at least **one opportunity to cure the defect alleged.**" W.Va.Code § 46A–6A–5(c)(emphasis added); *see also Bostic,* at 298–99, 406 S.E.2d at 729–30.

In fact, West Virginia requires that the manufacturer inform the consumer of his/her duty to provide to the manufacturer, not an agent or dealer, written notice of the alleged nonconformity and an opportunity to cure the same before the consumer is eligible to seek from the manufacturer a replacement vehicle or compensation via a Lemon Law action. Specifically, the Lemon Law requires that, upon purchase of the motor vehicle, the manufacturer must provide a separate notice to the consumer informing him/her of the consumer's duty in language essentially stating: "'IMPORTANT: IF THIS VEHICLE IS DEFECTIVE, YOU MAY BE ENTITLED UNDER STATE LAW TO A REPLACEMENT OR TO COMPENSATION. HOWEVER, **TO BE ENTITLED TO A REPLACEMENT OR TO COMPENSATION, YOU MUST FIRST NOTIFY THE MANUFACTURER OF THE PROBLEM IN WRITING AND PROVIDE THE MANUFACTURER AN OPPORTUNITY TO REPAIR THE VEHICLE.**'" W.Va.Code § 46A–6A–6 (emphasis added).

The foregoing statutory framework is to be read in *pari materia* in order to determine if a litigant has a cause of action against a manufacturer under the Lemon Law. *Adams,* at 239, 387 S.E.2d at 293; *see also Bostic,* at 297–99, 406 S.E.2d at 728–30. Obviously, the first issues to be determined are whether the pertinent defi-

nitions of, *inter alia,* "consumer," "manufacturer," and "warranty" have been satisfied. This takes place before the inquiry moves to a determination of whether there is a breach of the Lemon Law duties giving rise to an action, and only if these definitions are satisfied is a litigant allowed to proceed.

Next, the Court must determine if there is in fact a nonconformity present in the vehicle. W.Va.Code § 46A–6A–3. This will require a showing by the consumer that there has been a condition subject to an actual repair. Complaints which are not duplicated or verified, and thus not subject to an actual repair attempt, will not suffice to show that a nonconformity exists.

If a nonconformity can be shown by the consumer, the next inquiry is whether the nonconformity is such that it would trigger Lemon Law protection. "[I]f the consumer can show a defect or condition 'which substantially impairs the use or market value of the motor vehicle to the consumer after a reasonable number of attempts,' then the court's attention shifts to W.Va. Code § 46A–6A–5 to determine what is considered to be 'a reasonable number of attempts' by the manufacturer or dealer necessary to conform the motor vehicle to the applicable express warranties." *Adams,* at 239, 387 S.E.2d at 293. However, "...both steps in this two-step analysis are important....[i]f the nonconformity complained of is minor—it does not substantially impair the use or market value of the vehicle to the consumer—then the analysis fails and the court should not proceed to the second step found in W.Va. Code § 46A–6A–5[,]" to determine whether there has been a reasonable number of repair attempts. *Id.* at fn. 11.

Hence, a consumer must first show a nonconformity which results in a substantial impairment to the use or market value of the vehicle. Despite the language

"...to the consumer," *Adams* indicates the first step in this inquiry is subject to an objective standard as the court, not the consumer, is to determine whether such substantial impairment exists so as to allow the analysis to proceed to the second step. *Id.; see also* W.Va.Code § 46A–6A–4(c)(i)("It is an affirmative defense to any claim under [the Lemon Law]...that an alleged nonconformity does not substantially impair the use or market value...;" language "to the consumer" is not present). The determination clearly is not based on the subjective feelings or allegations of the consumer. A consumer's naked allegation that a substantial impairment exists, without actual evidence of the same, will not suffice.

If such an objective showing is made, then the court turns to the second step of the analysis by applying the repair attempt definitions to evidence of the vehicle's repair history to determine whether the manufacturer has breached a duty under the Lemon Law. *Adams,* at 239, 387 S.E.2d at 293; *see also Bostic,* at 298–99, 406 S.E.2d at 729–30. If there is such a breach, the consumer may have a cause of action pursuant to W.Va.Code § 46A–6A–4.

However, one further inquiry must be made. The repair attempt definitions may not be applied to a consumer's claims if the consumer has not, prior to filing the action, satisfied the condition precedent of providing the manufacturer with written notice of his/her complaints and allowing the manufacturer itself an opportunity to repair the alleged nonconformity. "Once a consumer establishes that the manufacturer failed in its duty to repair or replace the vehicle...then W.Va.Code, 46A–6A–4(a), provides that **the consumer has a cause of action against the manufacturer, provided the manufacturer has had the notice and opportunity to repair the defect**

as required by W.Va.Code, 46A–6A–5(c)." *Bostic, supra,* at syl. pt. 2 (emphasis added).

If all of the foregoing elements of the Lemon Law have been satisfied, the consumer may file an action seeking Lemon Law relief. W.Va.Code § 46A–6A–4(a); *Bostic, supra,* at syl. pt. 2 (emphasis added). No particular remedy is dictated by the Lemon Law, but the fact-finder may award a prevailing consumer one or more of the following: (1) revocation of acceptance, consisting of a full refund, or diminished value, W.Va.Code § 46A–6A–4(b)(1); (2) the cost of repair necessary to conform the vehicle to the warranty, W.Va.Code § 46A–6A–4(b)(2); (3) "damages for loss of use or annoyance or inconvenience resulting from the nonconformity...," W.Va. Code § 46A–6A–4(b)(3); and/or (4) reasonable attorney fees, W:Va.Code § 46A–6A–4(b)(4). *Bostic, supra,* at syl. pt. 2 (emphasis added). Costs of litigation, other than reasonable attorney fees, cannot be awarded to a consumer under the Lemon Law. *Id.* at 300, 406 S.E.2d at 731.

## C. *Discussion*

### 1. Timeliness of McLauglin's Response to DaimlerChrysler's Motion for Summary Judgment

■ First, the Court will address DaimlerChrysler's procedural argument that McLaughlin's untimely response must be disregarded. The Court agrees with DaimlerChrysler that McLaughlin failed to file and serve a timely response to its motion for summary judgment. The motion was served on McLaughlin by mail on June 29, 2000. His response was served by mail on October 3, 2000, and received for filing on October 4, 2000. This clearly falls beyond the time parameters set forth in L.R.Civ.P. 4.01(c), as expanded by Fed. R.Civ.P. 6(a) and (e). Moreover, DaimlerChrysler correctly points out that no enlargement of time was requested or granted under Fed.R.Civ.P. 6(b).

However, McLaughlin did eventually file a response, well before any hearing on the motion. While this does not excuse his tardiness, and he is admonished for the same, the fact that a response was ultimately filed, coupled with the Court's inherent obligation to determine whether DaimlerChrysler's Rule 56 motion establishes entitlement to judgment as a matter of law, even if unopposed, renders DaimlerChrysler's arguments on this issue moot. *See Custer v. Pan Am. Life Ins. Co.,* 12 F.3d 410, 415–16 (4th Cir.1993). Accordingly, the Court will move to the substantive aspects of DaimlerChrysler's motion.

### 2. McLaughlin's Status as a "Consumer" Under the Lemon Law

■ The Court agrees with DaimlerChrysler that McLaughlin is not a "consumer" as defined by the Lemon Law. Again, the Lemon Law provides:

> "Consumer" means the **purchaser**, other than for purposes of resale, of **a new motor vehicle** purchased in this state, used *primarily* **for personal, family or household purposes,** a person to whom **the** new motor vehicle is transferred for the same purposes** during the duration of **the** expressed warranty applicable to **the** motor vehicle and any other person entitled by the terms of **the** warranty to enforce the obligations of **the** warranty.

W.Va.Code § 46A–6A–2(1)(emphasis added)

McLaughlin's verified Complaint expressly states that he purchased the vehicle "primarily" for use in his business of buying and selling motorcycles at auctions. In addition to a vehicle repurchase, he seeks $616,000.00 in lost profits from those motorcycle auctions. Even though couched as damages for loss of use and annoyance, it is clear that the vast majori-

ty of McLaughlin's claimed damages are alleged business losses.

McLaughlin argues that the Lemon Law's definition of a "consumer" applies to vehicles used primarily in one's business as well as those used primarily for personal, family or household purposes. He interprets the statute to create three different categories of persons to be considered as consumers: (1) purchasers of new motor vehicles used primarily for personal, family or household purposes; (2) persons to whom such vehicles are transferred for the same purposes before expiration of the warranty; and (3) any person entitled to enforce the warranty on a new motor vehicle purchased or used for any purpose. McLaughlin argues that while the first two classes are limited to vehicles used primarily for personal, family or household purposes, he falls within the third class of consumers, which is much broader and would include persons purchasing vehicles primarily for business use. This interpretation ignores the plain language of the statute.

While § 46A–6A–2(1) defines three classes of persons as "consumers," it recognizes but one type of vehicle: "a new motor vehicle...used primarily for personal, family or household purposes." Thus, as noted by DaimlerChrysler, although three classes of "consumer" are set forth in the Lemon Law, it affords protection only for vehicles being used primarily for personal, family or household purposes. This is clear from § 46A–6A–2(1).

First, the statute defines a "consumer" as the actual "purchaser...of *a* new motor vehicle...used primarily for personal, family or household purposes." This is the person who actually chooses and originally buys any new motor vehicle primarily for personal, family or household purposes, becoming the original titular owner and possessor of that vehicle. Such persons comprise the first class of "consumers" under the Lemon Law.

Next, the statute defines a "consumer" to also include any "person to whom *the* new motor vehicle is transferred for the *same purposes* during the duration of *the* express *warranty* applicable to *the* new motor vehicle...." The statute obviously contemplates the subsequent sale or trade of "*the* new motor vehicle" by the original purchaser, resulting in transfer of title and possession of the **same** vehicle to another person. If the new owner purchases the subject vehicle primarily for personal, family or household purposes "during the duration of *the* express *warranty* applicable to *the* motor vehicle," then the new owner falls within the second class of "consumer" under the Lemon Law. Still, while this class is made up of persons other than the original purchasers, it focuses on the same motor vehicle being used primarily for personal, family or household purposes.

Finally, the Lemon Law definition of "consumer" includes "any other person entitled by the terms of **the warranty** to enforce **the warranty.**" This third class of consumers does not focus on a different type of vehicle or use, as contended by McLaughlin, nor does it refer to *a* person who may enforce "a warranty" or "**any** warranty.**" The statute is specific in its use of the words "*the* warranty," and clearly refers to the express warranty on the same vehicle used primarily for personal, family or household purposes as that addressed with respect to the first two classes. This third class merely provides for persons who may be entitled to enforce the warranty in addition to the original vehicle owners, class one, and subsequent qualifying owners, class two.

The statute clearly contemplates that the terms of the warranty may provide protection to, or be invoked by, someone other than the original or subsequent tit-

ular owner of the same personal, family, or household vehicle. For example, in a situation where the vehicle was originally or subsequently purchased by one person, who remains titular owner, for the personal, family or household use of another person who possesses and maintains the vehicle, the person possessing, using and maintaining the vehicle would qualify as a "consumer" under this third classification in addition to the vehicle's original or subsequent titular owner.

Contrary to McLaughlin's arguments, this third class of "consumer" does not alter, change or broaden the requirement that the vehicle be used primarily for personal, family, or household purposes. It does not extend Lemon Law protection to the purchaser of a vehicle primarily used for business purposes. If the West Virginia Legislature had wanted to include such vehicles or purposes within the protections afforded by the Lemon Law, it could have expressly done so. Conversely, it could have eliminated all references to specific vehicle purpose and simply and broadly defined a "consumer" as any original or subsequent purchaser, prior to warranty expiration, of any new motor vehicle used for any purpose.

If that were the case, this issue would not present itself, and McLaughlin would have no reason to offer his tortured interpretation of the statute. Of course, that is not how the statute was drafted or enacted. The intent of the West Virginia Legislature was obviously to limit Lemon Law protection to purchasers and titular owners of new vehicles, or previously-owned vehicles still under warranty, being used primarily for personal, family, or household purposes, and to others entitled to enforce the warranties on such vehicles.

■ Accordingly, the Court finds that, under W.Va.Code § 46A–6A–2(1), Lemon Law "consumers" are limited to persons entitled to enforce the express warranty applicable to a new motor vehicle purchased in this State and used primarily for personal, family or household purposes, namely the original purchaser of such vehicle, a subsequent transferee/owner of such vehicle who takes within the duration of the express warranty term, and other persons entitled to enforce the warranty on such vehicle.

McLaughlin's verified Complaint expressly states that the vehicle was purchased primarily for his business and that the principal portion of his claim is for lost business profits. While his response and affidavit, filed after this issue was raised by DaimlerChrysler, attempt to soften this stance by claiming that McLaughlin also used the vehicle for personal and household reasons, these documents also reinforce the fact that the vehicle was primarily used in McLaughlin's business. Moreover, McLaughlin has never sought to amend his verified Complaint, which makes no reference to any household or personal use of the vehicle.

The Court finds there to be no issue of material fact regarding McLaughlin's reasons for purchasing and using the vehicle, and even viewing the inferences derived from the underlying undisputed facts in the light most favorable to McLaughlin, the Court finds that McLaughlin's vehicle was purchased and used primarily for his business, and accordingly McLaughlin is not a "consumer" as defined by the Lemon Law at W.Va.Code § 46A–6A–2(1). Inasmuch as McLaughlin is not a "consumer" under the Lemon Law, he is not afforded a cause of action thereunder. Accordingly, pursuant to Fed.R.Civ.P. 56(c), and inasmuch as the Lemon Law is the only theory relied upon by McLaughlin in this action, DaimlerChrysler's Motion for Summary Judgment should be and hereby is **GRANTED.**

### 3. Substantial Impairment to the Use and Market Value of McLaughlin's Vehicle

■ DaimlerChrysler also seeks summary judgment based on the argument that the undisputed facts establish that there was no substantial impairment to the use and/or market value of McLaughlin's vehicle. Inasmuch as McLaughlin does not qualify as a "consumer" under the Lemon Law, and thus has no cause of action thereunder, the remaining Lemon Law issues are effectively moot. However, because these issues have been fully briefed and argued by the parties, and to provide clarification on these issues, the Court will address the same.

First, the Court notes that, as stated hereinabove, the determination of these issues is based on an objective standard, meaning that objective evidence other than simply the subjective feelings or statements of the consumer must be presented to support a consumer's claim that there has been a substantial impairment to the use and/or market value of his/her vehicle as a result of a nonconformity existing after a reasonable number of attempts. The Court finds that McLaughlin fails to objectively show a substantial impairment to the use and/or market value of his vehicle, and sets forth its reasons for this finding as follows.

McLaughlin's only evidence that his use of the vehicle was substantially impaired is his tender of repair orders. He relies solely on the vehicle's repair history, and argues that because the vehicle was subject to repair for drive train-related items a number of times, he has established that his use was substantially impaired. Unfortunately, this evidence does not carry the issue, and in fact supports DaimlerChrysler's position that there was no substantial impairment to the use of the vehicle.

While it is not disputed that the vehicle was repaired a number of times, as shown by the repair orders, this alone does not establish a substantial impairment to the use of the vehicle. If such were the case, the Lemon Law would not require that a consumer meet the threshold issue of showing a substantial impairment to the use or market value before moving to the repair history to determine whether the nonconformity was subject to a reasonable number of repair attempts. *See Adams, supra,* at fn. 11. Under McLaughlin's logic, the two-step analysis would be unnecessary as a consumer would need only satisfy the repair attempt standards to make a showing under both prongs of the test. McLaughlin must present some other evidence to support his argument that his use was substantially impaired, and this he fails to do.

Conversely, DaimlerChrysler points to the repair history, and argues that the mileage on the vehicle, as established by McLaughlin's repair orders, clearly shows there was no substantial impairment to his use of the vehicle. The Court agrees. The evidence before the Court, derived from McLaughlin's repair orders, indicates that McLaughlin put 11,165 miles on the vehicle in just over seven (7) months. DaimlerChrysler argues that the industry standard for average use is reflected in the terms of the standard express warranty, meaning that average use is 36,000 miles over a three-year period, or 12,000 miles per year and 1,000 miles per month. The Court accepts this standard, and McLaughlin has offered nothing to refute the same. Further, DaimlerChrysler notes that it appears from the repair records that the vehicle was only down for repair nine (9) days during McLaughlin's 11,165 miles of use, and that he received a rental vehicle for three (3) of these days. McLaughlin disputes the evidence that his vehicle was down only nine (9) days, claiming the actual days to be well over 30, but he offers no evidence to support his claims.

Accordingly, the Court finds that average use of the McLaughlin vehicle would have been in the 7,000–mile range for the seven-month period covered by the repair orders, not the 11,165 miles McLaughlin put on the vehicle, which far exceeded average use. Clearly, despite the repair history, McLaughlin enjoyed much more than average use of the vehicle. Daimler-Chrysler prevails on this issue based on the undisputed facts before the Court.

As for McLaughlin's claims that he has suffered a substantial impairment to the market value of the vehicle, Daimler-Chrysler relies on the fact that McLaughlin presents no evidence whatsoever of the same. He offers no evidence of the vehicle's market value with the alleged nonconformities present and no evidence of the market value of like vehicle without such nonconformities. Moreover, he has not offered any evidence relating to the theft of the vehicle, the value of the same at the time of the theft, or the insurance payment issued as a result of the theft. McLaughlin fails to make any showing that he suffered a substantial impairment to the vehicle's market value, and thus DaimlerChrysler prevails on this issue based on the undisputed facts before the Court.

The Court notes that DaimlerChrysler also argues that, upon information and belief, the insurance payment issued as a result of the vehicle theft was for full market value of the vehicle. This is apparently information DaimlerChrysler acquired directly from McLaughlin's insurer in discovery, but there is no supporting documentation of this payment offered. As stated, however, the Court need not obtain supporting evidence on this point as McLaughlin has offered no evidence whatsoever to support his impaired market value claims. Still, DaimlerChrysler's argument is compelling. The Court states that if such evidence of a market value insurance payment were presented to support

DaimlerChrysler's argument, with no counter evidence presented by McLaughlin, this insurance payment evidence, as represented by DaimlerChrysler, would clearly show there was no impairment to the market value of the vehicle, let alone a substantial impairment.

Further, the Court states that such evidence would be discoverable and could be properly tendered to this Court to show there was no substantial diminishment to the market value of the vehicle. Contrary to McLaughlin's arguments set forth in other documents filed in this case objecting to discovery of such evidence and/or witnesses testifying as to the same, West Virginia's collateral source rule would not affect its discoverability, relevance or admissibility. As stated, the evidence would be offered for a purpose other than to offset McLaughlin's damage claims. Moreover, even if offered to offset McLaughlin's damage claims, the collateral source rule applies only to damages resulting from injuries caused by a tortfeasor, not economic damages sought in a breach of warranty action sounding in contract. *See* syl. pts. 3, 4, *Johnson by Johnson v. General Motors Corp.*, 190 W.Va. 236, 438 S.E.2d 28 (1993). In fact, as noted by DaimlerChrysler, persons aggrieved by a breach of contract are encouraged to seek "cover" from third parties to reduce their damages.

Based on the foregoing, and viewing all inferences in the light most favorable to McLaughlin, the Court finds there are no issues of material fact regarding the use or market value of McLaughlin's vehicle, and the Court in turn finds there to be no substantial impairment to use or market value of the same. Accordingly, McLaughlin fails to meet an essential requirement for proceeding in a cause of action under the Lemon Law, W.Va.Code § 46A–6A–1, *et seq.* Thus, pursuant to

Fed.R.Civ.P. 56(c), and inasmuch as the Lemon Law is the only theory relied upon by McLaughlin in this action, Daimler-Chrysler's Motion for Summary Judgment should be and hereby is **GRANTED.**

## 4. Reasonable Number of Repair Attempts to Cure Alleged Nonconformities In McLaughlin's Vehicle

Because the Court does not move to the determination of a reasonable number of repair attempts if a consumer cannot meet the threshold requirement of showing a nonconformity which substantially impairs the use or market value of the vehicle, *Adams, supra,* at fn. 11, the number of repair attempts is a moot issue based on the rulings set forth hereinabove. However, McLaughlin still argues that he shows a nonconformity existed after a reasonable number of repair attempts, and thus summary judgment is inappropriate. Hence, the Court will briefly address this issue.

First, the Court notes McLaughlin's position is incorrect. As discussed herein, McLaughlin must first make an objective showing of substantial impairment to the use or market value of the vehicle. He fails to do so.

Next, the Court notes that the repair attempt presumptions set forth at W.Va. Code §§ 46A–6A–5(a) and (b) constitute mandatory standards which must be met by a consumer to show that a reasonable number of repair attempts were undertaken to correct the alleged nonconformity. As stated by the West Virginia Supreme Court of Appeals, W.Va.Code § 46A–6A–5 "...**defines** 'a reasonable number of attempts' which **must** be undertaken..." before a manufacturer can be held liable for a breach of its Lemon Law duties. *Adams,* at 238, 387 S.E.2d at 292 (emphasis added). *According to the West Virginia Supreme Court's interpretation of the Lemon Law, if the consumer can make the substantial impairment showing, "...then the court's attention shifts to W.Va.Code

§ 46A–6A–5 **to determine** what is considered to be a reasonable number of attempts by the manufacturer or dealer necessary to conform the motor vehicle to the applicable express warranties." Id.* at 239, 387 S.E.2d at 293 (emphasis added).

Clearly, a consumer must meet one of the three repair attempt standards before he/she can show a reasonable number of repair attempts. These standards require that a consumer show, within the earlier of one year from date of delivery or the express warranty term, three failed attempts to repair the same nonconformity, 30 days out of service due to repair, or one failed attempt to repair a nonconformity likely to cause death or serious bodily injury if the vehicle is driven. W.Va.Code §§ 46A–6A–5(a) and (b).

However, the required standards cannot be invoked by a consumer if he/she has not provided written notice to the manufacturer and allowed the manufacturer a chance to cure the defect before filing a Lemon Law action. W.Va.Code § 46A–6A–5(c). This requirement has been recognized by the West Virginia Supreme Court. *Bostic,* at 299, 406 S.E.2d at 730. Further, the West Virginia Legislature has emphasized this requirement in mandating that a manufacturer inform a consumer at the time of vehicle purchase of his/her duty to provide written notice and a repair opportunity to the manufacturer before the consumer is eligible to proceed under the Lemon Law. W.Va.Code § 46A–6A–6.

Here, McLaughlin argues that he shows three failed attempts to repair the same condition during his first year of ownership. He also suggests that the vehicle possesses a life-threatening defect which existed after one failed repair attempt, and that the vehicle was out of service for more than 30 days within the first year.

DaimlerChrysler does not argue the issue of a reasonable number of repair at-

tempts in support of its motion for summary judgment. It relies solely on its arguments that McLaughlin is not a "consumer" under the Lemon Law, and that even if McLaughlin were a "consumer" under the Lemon Law he fails to show a substantial impairment to the use or market value of the vehicle. As this Court has ruled, these arguments are sufficient to warrant summary judgment in this case.

However, the Court notes that McLauglin has provided no evidence that the vehicle was out of service for 30 days due to repair within the first year. Further, the fact that he put 11,165 miles on the vehicle during the first seven (7) months of ownership, during which all of his repairs occurred, clearly shows there was not an uncorrected nonconformity which was "likely to cause death or serious bodily injury if the vehicle was driven." If McLaughlin in fact does satisfy any of the repair attempt standards, it would be only the three-repair standard set forth in W.Va.Code 46A–6A–5(a). Regardless, as ruled herein, he is not a "consumer" nor has he shown a substantial impairment to the use or market value of the vehicle, so this standard does not apply in McLaughlin's case.

One additional point, not addressed by the parties, will be discussed by the Court. If McLaughlin were held to be a "consumer" under the Lemon Law, and if he could show a substantial impairment to the use or market value of the vehicle, before McLaughlin could proceed based on the three-repair standard he would have to show that he, before filing his Lemon Law action, provided DaimlerChrysler, not a dealer, with written notice of his complaints and also that he provided DaimlerChrysler, not a dealer, with an opportunity to repair the nonconformity. W.Va.Code § 46A–6A–5(c); W.Va.Code § 46A–6A–6; *Bostic*, at 299, 406 S.E.2d at 730. If such a showing could not be made, it is possible that DaimlerChrysler would be entitled to summary judgment as a result of that issue as well.

## IV. *Conclusion*

For the reasons stated above, this Court finds there is not a factually or legally sufficient basis from which a jury could find that the Plaintiff Gary Amos McLaughlin has a cause of action pursuant to W.Va.Code § 46A–6A–1, *et seq.*, West Virginia's "Lemon Law," against Defendant DaimlerChrysler Corporation, successor in interest to named Defendant Chrysler Corporation. Accordingly, the Defendant's Motion for Summary Judgment is **GRANTED**. This action is thus **DISMISSED** in its entirety with prejudice and **STRICKEN** from the docket of this Court.

The Court notes the objections of the Plaintiff for the record, and Plaintiff, who is now proceeding *pro se*, is advised that he has the right to appeal the judgment of this Court to the Fourth Circuit Court of Appeals. Notice of such appeal must be filed with the Clerk of this Court within thirty (30) days after the date of entry of this order.

**IT IS SO ORDERED.**

The Clerk of this Court is **DIRECTED** to transmit copies of this order to the pro se Plaintiff and to counsel of record herein. Pursuant to Fed.R.Civ.P. 58, the Clerk is further **DIRECTED** to enter judgment on this matter.